431 So.2d 40 (1983)
Ella Bennett CRAWFORD
v.
EARL K. LONG MEMORIAL HOSPITAL, et al.
No. 82 CA 0537.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
William C. Shockey, Baton Rouge, for plaintiff-appellant Ella Bennett Crawford.
Paul H. Spaht, Baton Rouge, for defendant-appellee Earl K. Long Memorial Hosp., et al.
Before PONDER, SAVOIE and CRAIN, JJ.
CRAIN, Judge.
This is an appeal of the judgment of the trial court in favor of the defendants, dismissing the plaintiff's petition for damages for wrongful death. We affirm.
Plaintiff, Ella Bennett Crawford, filed a petition for damages resulting from the alleged wrongful death of her son, William Sterling Ross. The defendants as of the time of trial were Earl K. Long Memorial Hospital, Louisiana Division of Hospitals, Louisiana Health & Social Rehabilitation Services Administration, and the State of Louisiana.
On or about August 17, 1975, plaintiff's son was involved in an incident in which he was hit in the head with a baseball bat, and stabbed in the shoulder. He was taken by ambulance to Baton Rouge General Hospital, and then transferred to Earl K. Long Hospital. After being examined at the emergency room of Earl K. Long, the emergency room doctor told a nurse on duty at the time to telephone Mr. Ross' home, and have someone pick Mr. Ross up at the hospital and take him home. A nurse, Fran Valenti, called plaintiff and told her to come get her son at the hospital. She did so. After arriving home with her son, plaintiff went to bed. Mr. Ross was talking to his sister, and did not go to bed until sometime later. Upon awakening the next morning, plaintiff went to Mr. Ross' bedroom, and discovered that he was dead.
A suit for damages was filed alleging that Mr. Ross' death was caused by the improper and inadequate diagnosis by the emergency room doctor, and the inadequate treatment received at the Earl K. Long *41 Hospital.[1] After trial on the merits, judgment was rendered in favor of the defendants, dismissing plaintiff's suit.
At issue is whether or not it was an acceptable medical practice to give home treatment instructions for head injury patients orally and/or in writing; and whether these instructions were actually given in either form in this case.
The testimony indicates that when, as here, certain objective symptoms are not present in head injury cases, it is proper to release the patient to his home under the supervision of family members or friends. The home treatment program requires that the injured person be awakened at regular intervals, questioned to determine whether or not comprehension is adequate, and examined to determine if the patient's pupils are the same size. The expert testimony established that in 1975, the common practice was to give these instructions orally to the person or persons responsible for the patient's care at home. It was also established that oral instructions may be more effective than written, depending on the person to whom the instructions are given.[2] We find no error in the determination of the trial court that the method of giving instruction was adequate.
The next question considered by the trial court was whether the home care instructions were actually given to the plaintiff, orally or in writing. The plaintiff alleges that she was given no such instructions upon her arrival at the hospital. The nurse, Fran Valenti, testified that she specifically recalled giving these instructions orally to the plaintiff, but did not recall if she also gave the home care instructions in writing. The trial court concluded that while plaintiff was not given any written instructions, some form of oral instruction sufficient to monitor the patient was transmitted by Mrs. Valenti to the plaintiff. As the court stated in its written reasons for judgment:
"Because of the appearance of credibility on the part of both principals, the deciding factor in the court's opinion was the insistence of the nurse in requiring Ms. Crawford to come to the hospital. Ms. Crawford acknowledged that Ms. Valenti was indeed insistent, but for another reason. It is difficult for the court to believe that in view of the emergency room's long standing custom of providing instruction to the relatives of the patients who had suffered head trauma that Ms. Valenti, an experienced nurse, would not have communicated the need for periodic regular awakenings and examinations of the patient. In the final analysis the court finds that although plaintiff's counsel presented a well prepared case, the plaintiff failed to sustain the burden of proof incumbent upon her."
We agree. We are impressed, as was the trial court, with the fact that the nurse insisted that plaintiff come to the hospital to get her son, rather than sending him home in a taxi as was requested by the plaintiff. This insistence conforms with the defendant's contention that the sole reason for having plaintiff come and get her son was so the home care instructions could be given by the nurse.
For the reasons assigned, the judgment of the trial court dismissing plaintiff's petition is affirmed. The costs are to be paid by appellant.
AFFIRMED.
NOTES
[1] The emergency room doctor was dismissed from the suit on a motion for summary judgment prior to the trial. The court found that the treatment and diagnosis by the doctor was proper and adequate. No appeal was taken relative to this ruling.
[2] The testimony indicates that currently the home care instructions for head injury patients are almost universally given in writing. However, this practice has developed more as a protective measure for hospitals and their staffs than as a preferable form of instruction for persons offering such home care treatment.