## ANNE MARIE MURILLO ET AL. *v.* SEYMOUR AMBULANCE ASSOCIATION, INC., ET AL.
(SC 16809)

## ANNE MARIE MURILLO ET AL. *v.* GRIFFIN HOSPITAL
(SC 16842)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued March 20—officially released June 24, 2003

*Ian Angus Cole*, for the appellants (plaintiffs).

*John J. Radshaw III*, with whom, on the brief, was *Thomas R. Gerarde*, for the appellees (defendant Seymour Ambulance Association, Inc., et al.).

*Daniel S. Ratner,* for the appellees (defendant Griffin Hospital et al.).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in these consolidated appeals[1] is whether the named plaintiff, Anne Marie Murillo,[2] who claims to have been injured in a fall when she fainted after observing a medical procedure being performed on her sister, was owed a duty of care by the defendants, Seymour Ambulance Association, Inc. (Seymour), Griffin Hospital (hospital), and their respective employees, Jennifer Fitzpatrick and Helen Zanowiak. After granting the defendants' motion to strike the plaintiff's complaints for lack of such a duty, the trial court[3] rendered judgment in favor of the defendants in both cases. We conclude that, as a matter of public policy, the defendants did not owe a duty of care to the plaintiff under the circumstances of these cases. Accordingly, we affirm the judgments of the trial court.

"For the purpose of ruling upon a motion to strike, the facts alleged in a complaint, though not the legal conclusions it may contain, are deemed to be admitted." *Maloney* v. *Conroy,* 208 Conn. 392, 394, 545 A.2d 1059

---

[1] The plaintiffs, Anne Marie Murillo and John Murillo, appealed from the trial court's judgment in both of their cases to the Appellate Court. We initially transferred the case against Seymour Ambulance Association, Inc., to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We thereafter granted the plaintiffs' motion to consolidate that appeal with their appeal in the Griffin Hospital case and transferred the Griffin Hospital appeal to this court pursuant to the same authority.

[2] Two complaints, arising out of the same incident involving an injury to the named plaintiff, Anne Marie Murillo, were filed. The plaintiff John Murillo's claim in each case was a derivative claim for loss of consortium. For convenience, we refer herein to Anne Marie Murillo as the plaintiff.

[3] Two different trial courts, *Holden,* J., and *Nadeau,* J., each granted one of the defendants' two motions to strike and a third trial court, *Moran,* J., rendered judgment in accordance with motions for judgment that were filed after the motions to strike were granted. We use "trial court" herein to refer to all three courts collectively.

(1988). The plaintiff's complaints against the defendants alleged the following relevant facts. In July, 1999, the plaintiff accompanied her sister to the hospital, where her sister was to undergo emergency abdominal surgery. While the plaintiff waited with her sister, Fitzpatrick, an emergency medical technician employed by Seymour, attempted a venipuncture procedure on the plaintiff's sister in order to create a portal for intravenous (IV) solutions that would be needed during the surgery. Fitzpatrick inserted an IV needle beneath the skin of the plaintiff's sister several times, but was unable to find a vein. The plaintiff watched as her sister moaned and wept as a result of the repeated unsuccessful attempts at the procedure. After Fitzpatrick had abandoned her attempts to insert the IV needle, Zanowiak, a registered nurse employed by the hospital, succeeded in inserting the IV needle into a vein.

As a result of having witnessed the repeated attempts to insert the IV needle into a vein in her sister's arm, the plaintiff began to feel faint. She told Fitzpatrick and Zanowiak that she believed that she was going to faint. The plaintiff's sister then repeated to Fitzpatrick and Zanowiak that the plaintiff had said that she felt as if she were going to pass out. Neither Fitzpatrick nor Zanowiak, however, made any effort to aid the plaintiff.

The plaintiff then fainted, and fell to the floor. As a result of her fall, the defendant suffered a broken jaw, broken and chipped teeth, and facial lacerations. She also experienced headaches after the fall. The plaintiff subsequently underwent surgery for her broken jaw and received additional medical treatment. As a result of her injuries, the plaintiff was out of work for a period of time and suffered lost wages.

The plaintiff subsequently filed an action against the hospital. At the time the plaintiff filed her complaint, she did not know the identities of the two health care

workers who had been present when she fainted. The plaintiff subsequently learned the identities of Zanowiak and Fitzpatrick, and learned that Fitzpatrick was an employee of Seymour. The plaintiff then brought a second action, naming Zanowiak, Fitzpatrick and Seymour as defendants.

Pursuant to Practice Book § 10-39,[4] the defendants in each case moved to strike the plaintiff's complaint, claiming that the complaints were legally insufficient. The trial court granted both motions to strike, concluding in each case that the defendants did not owe a duty of care to the plaintiff under the facts as alleged. The trial court subsequently rendered judgment for the defendants in each case. These appeals followed.

On appeal, the plaintiff claims that the trial court improperly rejected her claim that the defendants owed her a duty of care to prevent injuries to her that reasonably were foreseeable as a result of her observation of the repeated attempts to insert an IV needle in a vein in her sister's arm and her warning to the defendants that she believed that she was going to faint. We disagree, and conclude that, as a matter of public policy, the defendants owed no duty to the plaintiff—a bystander who was not a patient of the defendants—to prevent foreseeable injury to her as a result of her observing the medical procedures performed on her sister.

We begin by setting forth the applicable standard of review. The issue of whether a duty exists is a question of law that is subject to plenary review. *LePage* v. *Horne*, 262 Conn. 116, 123, 809 A.2d 505 (2002). "The existence

_____

[4] Practice Book § 10-39 provides in relevant part: "(a) Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading . . . ."

of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . . We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Internal quotation marks omitted.) *Gazo* v. *Stamford*, 255 Conn. 245, 250, 765 A.2d 505 (2001).

There can be no question that, under the circumstances of the present case, the plaintiff's injuries were foreseeable. Both the plaintiff and her sister advised Zanowiak and Fitzgerald that the plaintiff was feeling faint prior to the time when she actually passed out. Our conclusion with regard to the existence of a duty under these facts therefore depends on public policy considerations.

"A simple conclusion that the harm to the plaintiff was foreseeable . . . cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like

the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Internal quotation marks omitted.) *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 633, 749 A.2d 630 (2000).

We previously have recognized four factors to be considered in determining the extent of a legal duty as a matter of public policy: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions. *Perodeau* v. *Hartford*, 259 Conn. 729, 756–57, 792 A.2d 752 (2002); *Jaworski* v. *Kiernan*, 241 Conn. 399, 407, 696 A.2d 332 (1997). In the present case, all four factors support our decision not to recognize a duty of care owed to the plaintiff.

We begin with the normal expectations of the participants: the plaintiff, a bystander; her sister, the defendants' patient, who was about to undergo emergency surgery; and the defendants, providers of medical care. Given the urgent need of the plaintiff's sister for medical care, the normal expectations of the participants would be that the defendants would focus their effort to provide medical assistance on the plaintiff's sister, their patient, who was in need of emergency surgery. The normal expectations of the participants would not require the defendants also to keep a watchful eye on the plaintiff, who chose to observe while her sister underwent the insertion of the IV needle into her arm.

The reasonableness of these expectations is underscored by a decision in which this court rejected a claim for negligent infliction of emotional distress by

a plaintiff who had observed allegedly negligent medical treatment of her mother. *Maloney* v. *Conroy*, supra, 208 Conn. 393. In *Maloney*, the court commented that "[m]edical judgments as to the appropriate treatment of a patient ought not to be influenced by the concern that a visitor may become upset from observing such treatment . . . . The focus of the concern of medical care practitioners should be upon the patient and any diversion of attention or resources to accommodate the sensitivities of others is bound to detract from that devoted to patients." Id., 403.

We turn next to the second factor in the four factor test, the public policy of encouraging participation in the activity at issue. As a matter of public policy, and as we previously stated in *Maloney*, the law should encourage medical care providers, such as the defendants, to devote their efforts to their patients, and not be obligated to divert their attention to the possible consequences to bystanders of medical treatment of the patient. Id. The third factor, avoiding increased litigation, also militates against recognizing a duty of care to the plaintiff. Establishing a duty by medical providers to bystanders witnessing medical procedures would, no doubt, lead to the filing of additional lawsuits because bystanders would seek compensation for injuries caused by fainting or other reactions to witnessing medical procedures.

With reference to the fourth and final factor, we find support for our conclusion in decisions from many other jurisdictions. In *Sacks* v. *Thomas Jefferson University Hospital*, 684 F. Sup. 858 (E.D. Pa. 1998), the United States District Court for the Eastern District of Pennsylvania evaluated a plaintiff's claim that a hospital owed her a duty of care under circumstances similar to those of the present case. In *Sacks*, "[the plaintiff] brought her young daughter to the hospital emergency room seeking emergency treatment for a wound to the

child's forehead. It required stitches. The child was admitted for the necessary treatment. During the suturing procedure, [the plaintiff] was permitted to remain with her daughter in the treatment room. The doctor on duty, while engaged in suturing the forehead, asked [the] plaintiff to hold her daughter's head. [The] [p]laintiff voluntarily did as she was requested. While observing the suturing, [the] plaintiff told the defendant's agent that she felt faint and was going to leave the treatment room. While exiting . . . [the plaintiff] fainted and fell to the floor, sustaining injuries." Id., 858–59.

The District Court declined to recognize a duty to the injured mother under the facts of that case. Although the court found that the plaintiff's injuries were foreseeable, it nevertheless concluded that she was not owed any duty by the hospital: "Foreseeability of injury, however, in the absence of a duty to prevent that injury, is an insufficient basis on which to rest liability. . . . [The plaintiff] has failed to prove the existence of a duty on the part of the hospital to prevent those injuries." (Citations omitted.) Id., 860.

In *O'Hara* v. *Holy Cross Hospital*, 137 Ill. 2d 332, 561 N.E.2d 18 (1990), the plaintiff fainted while observing her eleven year old son's treatment for a facial laceration. The Illinois Supreme Court rejected the plaintiff's claim that she was owed a duty of care by the hospital: "The primary function of the emergency room is to treat patients. . . . Placing a duty on emergency rooms to protect nonpatient bystanders from fainting is contrary to the policy of reducing the burden existing in the health care professions." (Citations omitted.) Id., 341–42.

The Kansas Appellate Court has refused to recognize a duty on the part of a hospital to warn a visitor of the possibility of fainting. In *Walters* v. *St. Francis Hospital & Medical Center, Inc.*, 23 Kan. App. 2d 595, 596, 932

P.2d 1041 (1997), the plaintiff, who had accompanied his fiancee to the emergency room, fainted while holding his fiancee's hand during the insertion of a nasogastric tube. The court concluded that although the hospital owed the plaintiff a duty to inform him of the procedure that he would be observing, "[t]he danger of becoming queasy or fainting, however, was open, obvious, and known to [the plaintiff]. We conclude that ordinary and reasonable care does not require a hospital to warn an invitee that he or she might have an adverse reaction to witnessing a medical procedure. More specifically, a hospital has no duty to warn an invitee about the possibility of becoming queasy or fainting from witnessing a medical procedure because this is a danger that is open, obvious, and known to the invitee. The myriad of possible adverse reactions of an individual accompanying another to the hospital are not within the knowledge of the hospital. A contrary conclusion could open hospitals to claims that would cause hospitals to bar all visitors during all treatments." Id., 601.

The plaintiff has not cited a case from any jurisdiction, and we have not found one, that recognizes a duty to a bystander injured as a result of fainting after observing a medical procedure. The plaintiff urges us, instead, to adopt § 321 of the Restatement (Second) of Torts and apply it to the facts of this case in order to establish a duty to the plaintiff.

We have not adopted § 321 of the Restatement (Second) in the past and, even if it were applicable, we would decline to do so in the present case. That section provides that "(1) [i]f the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect. (2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such

a risk." 2 Restatement (Second), Torts § 321 (1965). This section of the Restatement (Second) is not consistent with our jurisprudence regarding the establishment of a duty of care. Section 321 of the Restatement (Second) creates a duty based on foreseeability alone, without any consideration of the public policy concerns that we have concluded are an essential component of our traditional duty analysis.

The judgments are affirmed.

In this opinion the other justices concurred.