JULIE DESIMINI *v.* BRISTOL HOSPITAL, INC., ET AL.

Superior Court, Judicial District of New Britain
File No. CV05-4003250S

Memorandum filed April 26, 2007

*Louis Flynn, Jr.*, for the plaintiff.

*O'Brien, Tanski & Young, LLP*, for the named defendant.

*Cooney, Scully & Dowling*, for the defendant Joseph J. Robles.

*Jack V. Genovese Law Offices*, for the defendant Greater Bristol Visiting Nurse Association.

SCHUMAN, J. The question presented in this motion to strike is whether a doctor has a general duty to provide medical advice concerning a competent adult patient to a member of the patient's family. The court holds that a doctor does not and grants the motion to strike.

I

A motion to strike tests whether the allegations of a complaint "state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.*, 224 Conn. 210, 215, 618 A.2d 25 (1992). The court must construe the allegations in a light most favorable to the plaintiff. See *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997). In her January 31, 2007 substituted complaint, Julie Desimini, the plaintiff, alleges in count one that she is the executrix of

the estate of the decedent, her late husband, Carmine Desimini. According to the allegations, the plaintiff's decedent was a patient of defendant Joseph J. Robles (defendant) for the treatment of obesity. On August 26, 2002, the defendant performed gastric bypass surgery on the plaintiff's decedent at the defendant Bristol Hospital, Inc., and, on September 3, discharged him from that hospital. Four days later, the plaintiff's decedent collapsed at home and died. According to a postmortem examination, the causes of death were pulmonary emboli, peritonitis and sepsis.

In count one, the plaintiff alleges that the defendant committed medical malpractice in the discharge process by, among other things, failing properly to warn, advise and instruct the plaintiff's decedent about the postdischarge management of his condition. In count two, which the defendant moves to strike, the plaintiff alleges that the defendant, in a variety of ways, "failed to . . . educate [properly] and instruct the Plaintiff, being the Plaintiff's Decedent's spouse, with respect to Plaintiff's Decedent's post-discharge conduct and health. . . ." The defendant also moves to strike count seven, which seeks damages for the plaintiff's loss of consortium from the conduct alleged in count two.[1]

II

The defendant's motion raises a question of the extent of a doctor's legal duty. "[T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature

[1] The other counts are mostly against other defendants and are not in issue here.

of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Internal quotation marks omitted.) *Murillo* v. *Seymour Ambulance Assn., Inc.*, 264 Conn. 474, 479, 823 A.2d 1202 (2003).

Even assuming that the court could conclude that the harm in the present case would be foreseeable if the defendant failed to provide postdischarge instructions to the plaintiff, that conclusion would not end the inquiry. "A simple conclusion that the harm to the plaintiff was foreseeable . . . cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the rippling of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Internal quotation marks omitted.) Id., 479–80. The court has "recognized four factors to be considered in determining the extent of a legal duty as a matter of public policy: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while

weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." Id., 480.

### III

The plaintiff makes clear that she is not claiming that the defendant owed a duty to her as a member of the patient's family. The plaintiff realizes that, under Connecticut case law, a doctor's duty is to the patient, not to the patient's family members or other nonpatient bystanders. See id., 478.

The plaintiff claims instead that the defendant owed a duty to the patient to instruct the patient's family member about his postdischarge care. There is no allegation or claim that the plaintiff's decedent was incompetent, a minor or otherwise incapable of understanding any instructions that the plaintiff claims she should have received. Cf. *Crawford* v. *Earl K. Long Memorial Hospital*, 431 So. 2d 40 (La. App. 1983) (appropriate for doctor to give instructions to mother of head injury patient, who apparently was minor child); *Bateman* v. *Rosenberg*, 525 S.W.2d 753, 756 (Mo. App. 1975) (in case in which patient groggy and bloody from tonsillectomy, court stated: "[i]f the doctor is unable to personally attend a person under such circumstances it is incumbent upon him to see that those persons who are to be in nursing attendance upon the patient are competent to perform those services or to give them such instruction as will enable them to competently look after and care for the patient"). In fact, the plaintiff alleges in count one that the defendant failed to give appropriate postdischarge instructions to the plaintiff's decedent, thus suggesting that the plaintiff's decedent was fully capable of understanding them.

There is no Connecticut appellate authority on point. The case law elsewhere affirms that a doctor has a

general duty to provide appropriate health care instructions to the patient. In *Barnes* v. *Bovenmyer*, 255 Iowa 220, 122 N.W.2d 312 (1963), the court stated that "[i]t is the duty of a physician in taking charge of a case, to follow the case, and to give proper instructions to the patient as to his future acts and conduct." (Internal quotation marks omitted.) Id., 227. The plaintiff, however, has failed to cite any case law, nor has the court found any, that would require a doctor to provide instructions to a competent patient's family.[2]

Any such holding could have grave policy implications. As our Supreme Court has observed, the doctor-patient relationship is a "highly personal [one]." *Vitanza* v. *Upjohn Co.*, 257 Conn. 365, 391, 778 A.2d 829 (2001). It is the "patient's physician who, by virtue of his or her relationship with the patient and knowledge of the patient's medical condition and history, can best advise the patient . . . ." *Sherwood* v. *Danbury Hospital*, 278 Conn. 163, 187, 896 A.2d 777 (2006). Requiring a doctor to provide postdischarge instructions to a family member of the patient when the patient himself is competent could put the doctor in the difficult position of deciding which of several relatives to advise. Or, it might obligate the doctor to disseminate otherwise private medical information that the patient did not desire the relative in question to know. Undoubtedly, a rule mandating that doctors provide postdischarge instructions to the patient's family will result in more litigation, as patients will claim that the doctor did not properly or adequately advise some member of their

---

[2] In *Christy* v. *Saliterman*, 288 Minn. 144, 179 N.W.2d 288 (1970), the court suggested only that the duty to communicate with family members is an option, rather than a requirement. "[I]t is the duty of a physician or surgeon, in dealing with a case, to give the patient or his family or attendants all necessary and proper instructions as to the care and attention to be given to the patient and the cautions to be observed, and a failure to give such instructions is negligence which will render him liable for resulting injury." Id., 167–68.

family about their postdischarge management. All of these costs and concerns seem unjustified, as it is hard to see any particular benefit being derived from requiring a doctor to advise a family member about the patient's postdischarge management when the patient is fully competent to understand the advice on his or her own.

In addition, a requirement that doctors must routinely provide advice to relatives about a patient's medical condition may violate federal law, or at least compromise the public policy behind federal law. The privacy provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (1996), create national standards to protect individuals' medical records and other personal information. See L. Boyle & D. Mack, HIPAA, A Guide to Health Care Privacy and Security Law (2007) p. 6:4. The general rule in the regulations promulgated under HIPAA is that a doctor or covered medical professional may disclose relevant protected health information to family members when the patient expressly or impliedly consents or, if the patient is not present, when the doctor in his professional judgment deems it to be in the best interest of the patient. 45 C.F.R. § 164.510 (b). Contrary to the spirit of these regulations, the duty proposed by the plaintiff to mandate the provision of postdischarge instructions to the family would supplant the physician's professional judgment and possibly violate the patient's privacy rights.

For these reasons, the court finds that there is no basis to infer or create a duty under Connecticut tort law that obligates a doctor to provide postdischarge advice to a patient's relative when the patient is fully competent to receive that advice. Any such fundamental change in our law should come from the duly elected legislature, not the courts.

## IV

The loss of consortium claim alleged in count seven is derivative of the medical malpractice claim in count two. See *Musorofiti* v. *Vlcek*, 65 Conn. App. 365, 375–76, 783 A.2d 36, cert. denied, 258 Conn. 938, 786 A.2d 426 (2001). Since count two fails to state a claim upon which relief can be granted, the claim for loss of consortium fails as well. Id., 376.

## V

The defendant's motion to strike counts two and seven of the plaintiff's substitute complaint is, therefore, granted.