******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## APPENDIX
## ALEX RODRIGUEZ ET AL. *v.* DOUGLAS CLARK*

Superior Court, Judicial District of Waterbury

File No. CV-13-6020248-S

Memorandum filed June 10, 2014

*Proceedings*

Memorandum of decision on defendant's motion to strike. *Motion granted.*

*Donald McPartland*, for the plaintiffs.

*James G. Williams* and *Christian M. Gunneson*, for the defendant.

*Opinion*

SHAPIRO, J. On May 12, 2014, the court heard oral argument concerning the defendant's motion to strike all counts of the plaintiffs' complaint. After consideration of the parties' written submissions and oral arguments, the court issues this memorandum of decision. For the reasons stated below, the motion is granted.

I

BACKGROUND

In Count One of the complaint, the plaintiffs allege that, on July 13, 2011, plaintiff Alex Rodriguez was employed as a police officer by the City of Middletown, Connecticut (City).[1] The plaintiffs allege that, on that date, the defendant, Douglas Clark, was also employed as a police officer by the City, and was assigned a police cruiser and a K-9 dog, which was specially trained to attack human beings involved in criminal activities who needed to be subdued and arrested by the police.

They also allege that, on that date, Rodriguez was in the process of subduing a man he was arresting at an altercation, and that, at the scene, the defendant was assigned to aid fellow police officers and knew that the dog was not needed to subdue the persons his fellow officers were in the process of subduing and arresting. See complaint, all counts, paragraphs 3 and 4.

In paragraph 5, the plaintiffs allege that, on that date, the defendant drove the cruiser to the scene, with the dog in it, "placed the gear shift from drive to park; he exited the cruiser and closed the driver's side door; left the key in the ignition and the motor running and a window open; left to assist his fellow police officers in subduing and arresting criminals when the K-9 dog jumped out of an open window in the police car and, unsupervised, it ran and attacked and nipped a policeman and thereafter it attacked and bit . . . Rodriguez, a second policeman, on his left leg causing serious injuries and damages . . . ."

The plaintiffs allege that Rodriguez' injuries and damages were caused by the defendant's negligence, in one or more ways. See complaint, paragraph 8. In paragraph 9, the plaintiffs allege that the defendant's conduct constituted negligent operation of the motor vehicle pursuant to General Statutes § 31-293a. Rodriguez alleges that, as a result, he has suffered permanent injuries, causing his retirement from his career as a police officer, and including permanent scarring, and permanent interference with his mobility. These allegations are incorporated in all four counts.

In Count Two, Rodriguez alleges that the defendant is liable to him under General Statutes § 22-357 (dog bite statute). In Counts Three and Four, based on the same allegations. Rodriguez' wife, plaintiff Rachel Rodriguez, alleges that the defendant is liable to her

for loss of consortium. Additional references to the allegations are set forth below.

## II

## STANDARD OF REVIEW

"[A] motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the . . . court . . . . We take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 309 Conn. 342, 350, 71 A.3d 480 (2013).

Legal conclusions in a complaint are not deemed to be admitted. *Murillo* v. *Seymour Ambulance Assn., Inc.*, 264 Conn. 474, 476, 823 A.2d 1202 (2003).

## III

## DISCUSSION

The defendant argues that Counts One and Two are barred by the exclusivity provision of the Workers' Compensation Act, General Statutes § 31-275 et seq. In addition, the defendant contends that Count Two is also barred by governmental immunity because § 22-357, the dog bite statute, does not abrogate the immunity offered to municipalities under General Statutes § 52-557n, and because § 22-357 does not provide that governmental immunity is not a defense to a dog bite action. The defendant also argues that the loss of consortium counts, as derivative claims, are barred by the workers' compensation scheme.

In response, the plaintiffs assert that they state legally sufficient causes of action for negligence (Count One) and under § 22-357 (Count Two) because their allegations fall within the motor vehicle exception to the exclusivity provision of the Workers' Compensation Act, and the defendant does not enjoy governmental immunity because his negligence occurred in the performance of a ministerial act. In the alternative, they argue that, even if the negligence had been in the performance of a discretionary act, the defendant is liable because the negligence subjected Rodriguez, an identifiable person, to a risk of imminent harm. They also assert that, since their allegations in Counts One and Two are

legally sufficient, their loss of consortium claims are similarly not barred.

"Connecticut's Workers' Compensation Act . . . is the exclusive remedy for injuries sustained by an employee arising out of and in the course of his employment. . . . General Statutes § 31-284 (a). Under the act's strict liability provisions, workers are compensated without regard to fault. In return for a relatively low burden of proof and expeditious recovery, employees relinquish their right to any common-law tort claim for their injuries. . . . Generally, then, all rights and claims between employers and employees, or their representatives or dependents, arising out of personal injury or death sustained in the course of employment are abolished as a result of the act's exclusivity bar.

"Another provision of [this state's] act, [namely] . . . § 31-293a,[2] creates an exception, however, to the otherwise applicable exclusivity bar. In relevant part, § 31-293a provides that [i]f an employee . . . has a right to benefits or compensation . . . on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious *or the action is based on the fellow employee's negligence in the operation of a motor vehicle.* . . . [I]f an employee suffers injuries, which otherwise would be compensable under the act, due to the negligence of a fellow employee, the injured employee is barred from recovery against that fellow employee unless the injuries were caused by the fellow employee's negligent operation of a motor vehicle." (Citation omitted; emphasis added; footnote added; internal quotation marks omitted.) *Jaiguay* v. *Vasquez*, 287 Conn. 323, 328–29, 948 A.2d 955 (2008).

"[T]he legislature has expressed its preference for a bright line test to determine whether an employee may recover from a fellow employee for injuries sustained as a result of the latter's negligence in the operation of a motor vehicle. Under that test, an injured employee may recover against a fellow employee as long as that fellow employee is *operating* a 'motor vehicle,' as that term is defined in [General Statutes] § 14-1 [53][3] and limited under § 31-293a." (Emphasis added; footnote added.) *Colangelo* v. *Heckelman*, 279 Conn. 177, 192, 900 A.2d 1266 (2006); *Cirillo* v. *Sardo*, 41 Conn. App. 664, 669, 676 A.2d 1388 ("'[o]peration' of a motor vehicle connotes the control and direction of it, the activity of an 'operator' or 'driver' licensed for that purpose"), cert. denied, 239 Conn. 904, 682 A.2d 998 (1996).

"[R]eview of the defendant's claim hinges on two specific questions: (1) was the accident caused by a motor vehicle and, if so, (2) did the defendant operate that motor vehicle?" *Arias* v. *Geisinger*, 126 Conn. App.

860, 866, 15 A.3d 641, cert. denied, 300 Conn. 941, 17 A.3d 476 (2011). "The issue of whether the defendant was engaged in the operation of a motor vehicle at the time of the incident is an issue of law." Id., 870–71.

"[Our Supreme Court has] long held that . . . exceptions to statutes are to be strictly construed with doubts resolved in favor of the general rule rather than the exception . . . ." (Internal quotation marks omitted.) *Suprenant* v. *Burlingham*, 64 Conn. App. 409, 414, 780 A.2d 219 (2001) (concluding that motor vehicle exception in § 31-293 was not applicable).

For example, *Kegel* v. *McNeely*, 2 Conn. App. 174, 476 A.2d 641 (1984), involved the electrocution of the decedent coemployee of the defendant when contact occurred between high tension wires and a crane. "At the time of the death of the plaintiff's decedent, he and the defendant were coemployees involved in moving and stacking floating docks for their employer. The defendant's job was to operate a truck cab, to the rear of which was a crane on a turntable mounted on the truck bed. The crane was controlled by another employee who, at the time of the accident, was seated in the crane. The decedent was working on the ground, loading and unloading the floating docks onto and off of a sling suspended from the boom of the crane. The entire procedure was supervised by a fourth employee who served as a ground guide. The crane and the truck each had an engine and a set of controls which operated independently of one another. The defendant controlled the locomotion of the truck from the truck cab and the action of the crane and boom was controlled from the crane cab. The accident occurred when the boom of the crane or the crane cable came in contact with overhead high-tension wires. This contact caused the instantaneous electrocution of the decedent who, at the time, was holding a part of the metal sling which was attached to the crane cable. The evidence adduced at trial established that immediately prior to the accident, the employee acting as the ground guide directed the defendant to back the truck into position to lower a floating dock. The defendant stopped the truck at the spot indicated, turned off the ignition and remained seated in the cab with his foot on the brake. The truck was stationary at the time of the accident." Id., 176–77.

The Appellate Court concluded, "If a coemployee is not engaged at the time of the fellow employee's injury in any activity related to driving or moving a vehicle or related to a circumstance resulting from the movement of a vehicle, the lawsuit does not fall within the exception of . . . § 31-293a. . . . At the time of the decedent's injury, the truck, with its ignition having been turned off, could not function to move the truck itself nor did it function or move so as to change the position of the crane or its boom. On the basis of the evidence of this case, the jury could not have found

that the accident was caused by the negligence of the defendant in the operation of a motor vehicle. . . . [A]s a matter of law, the plaintiff's action was barred . . . ." (Citations omitted.) Id., 178.

The plaintiffs argue that operation of a motor vehicle has been held to include the parking of a motor vehicle. In *Allison* v. *Manetta*, 84 Conn. App. 535, 537, 854 A.2d 84, cert. denied, 271 Conn. 931, 859 A.2d 582 (2004), cited by the plaintiffs, "the plaintiff alleged that [defendant James M.] Zucco was . . . operating a dump truck (truck) owned by the state. She alleged that on the date in question, Zucco negligently had stopped the truck beneath a ridge on Route 44 in such a manner that the truck partially obstructed the westbound lane. Zucco allegedly failed to use any means of warning to alert drivers that the truck was parked in a manner that obstructed the westbound lane of Route 44. The plaintiff alleged that, pursuant [General Statutes] § 52-556,[4] the state was liable for Zucco's negligence." Thus, the accident allegedly resulted from Zucco's positioning of the truck when he parked it.

The Appellate Court stated that "operation of a motor vehicle occurs when there is a setting in motion of the operative machinery of the vehicle, or there is movement of the vehicle, or there is a circumstance resulting from that movement *or an activity incident to the movement of the vehicle from one place to another*." (Emphasis in original; internal quotation marks omitted.) Id., 540–41. "The truck that Zucco was operating on the date of the accident was the means of locomotion he used to follow a designated route of state highway to correct maintenance problems he discovered. When he came upon . . . water running onto the roadway in Salisbury, he parked the truck with its motor running adjacent to [a] driveway so that he could exit the truck to perform the required maintenance. On this set of facts, we concluded, as a matter of law, that Zucco was operating the truck within the meaning of § 52-556. He had parked the truck as an activity incident to moving it from one place to another along his designated maintenance route to fulfill his responsibilities for the [D]epartment [of Transportation]. There was, consequently, a temporal congruence between the operation of the truck and the plaintiff's injury." Id., 541–42.

Here, in contrast, the dog bite, which allegedly occurred after the dog left the parked police cruiser and bit Rodriguez, not the positioning of the parked vehicle so as to partially obstruct a travel lane, was the alleged cause of injury. See complaint, all counts, paragraph 5. In *Allison* v. *Manetta*, supra, 84 Conn. App. 536–37, the positioning of the truck allegedly caused another driver to collide with the plaintiff's vehicle. The plaintiff's allegations here, including that the dog was not controlled within the cruiser and that the window of the cruiser was left open, do not establish the necessary

temporal congruence between operation of the vehicle and the claimed injuries. Negligence in failing to secure the dog was not an activity incident to the movement of the cruiser from one place to another.

Similarly, in *Hicks* v. *State*, 287 Conn. 421, 433, 948 A.2d 982 (2008), also cited by the plaintiffs, another action concerning a state vehicle, the Supreme Court reiterated its approval, in *Allison* v. *Manetta*, 284 Conn. 389, 397, 933 A.2d 1197 (2007), of the Appellate Court's previous construction, of the meaning of "operation of a motor vehicle" in the context of § 52-556, "even though the truck was parked and [the operator] was outside of it at the time of the accident." (Internal quotation marks omitted.) *Hicks* v. *State*, supra, 433, noting that "the term operation encompasses both parking incident to travel and movement." (Internal quotation marks omitted.) Id., 434.

As explained in *Allison* v. *Manetta*, supra, 284 Conn. 399, "if [Zucco] had parked the state truck as an activity incident to moving it from one place to another along his designated maintenance route to fulfill his responsibilities, he was operating the truck as that word is used in § 52-556, even though the truck was parked and he was outside of it at the time of the accident." In contrast, if "the truck was being used as a warning device or as a protective barrier . . . the jury . . . must find for the defendant because the truck was not being 'operated' under § 52-556." ld., 400 (discussing *Rivera* v. *Fox*, 20 Conn. App. 619, 624, 569 A.2d 1137, cert. denied, 215 Conn. 808, 576 A.2d 538 [1990]).

However, the plaintiffs mistakenly argue that, in affirming a judgment for the plaintiff in *Hicks*, the Supreme Court "conclud[ed] that the state's employee was engaged in the operation of the motor vehicle, despite that the parked truck itself was not involved with the collision." See plaintiffs' objection (#106) p. 8. Rather, as explained below, evidence showed that the state or department truck was both moving and involved with the accident, and the jury found in favor of the plaintiff based on "negligent operation by way of moving the truck . . . ." *Hicks* v. *State*, supra, 287 Conn. 436. In discussing the evidence supporting the verdict, the court cited testimony by an independent eyewitness, who stated that, at the time of the accident, she was driving behind the defendant's *moving*, not parked, truck. See id., 427.

The eyewitness, Linda Guard, "repeatedly stated that she was certain that the department truck was in the westbound travel lane, in front of the plaintiff's truck, when the accident occurred and that she had seen the department truck moving slowly in that lane within the five or ten seconds that it took her to pull her car off the road to assist the plaintiff, as the plaintiff's truck was sliding to a stop. Guard further stated that the department truck was close enough in front of the plain-

tiff's truck that she thought his truck would strike it, and that the plaintiff did not do so only because the department truck kept moving. On the basis of Guard's testimony, the jury reasonably could have inferred that, if the department truck was moving seconds after the accident, it was moving seconds earlier as the accident was occurring." Id., 436. Thus, the jury reasonably could have inferred that the department truck was moving, not parked, when she saw it "in the westbound lane when the plaintiff's truck flipped on its side after striking the guardrail." Id., 437.

Another appellate decision cited by the plaintiffs, *Kiriaka* v. *Alterwitz*, 7 Conn. App. 575, 509 A.2d 560, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986), provides a useful illustration. In contrast to the other cases cited by the plaintiffs and discussed above, *Kiriaka* involved analysis of the applicability of § 31-293a, not § 52-556. The court explained that "[i]n order to find . . . negligent operation allowing supplementary tort recovery against the employee operator within the exclusion of § 31-293a, the fellow employee's injury must have been caused by the negligent movement or circumstance resulting from the movement of the employer's truck." ld., 579.

There, "[i]n the course of their employment . . . [the defendant Peter] Lipscomb was operating their employer's furniture van in a northerly direction on Route 137 in Stamford, with [the plaintiff, Boleslaw] Kiriaka as a passenger, when he stopped on the highway and parked the vehicle at the easterly curb of the road with its lights and flashers on. After Lipscomb parked the truck, he remained in the cab and reviewed work papers. In the meantime, Kiriaka alighted and proceeded to cross the highway from east to west when he was struck by a motor vehicle . . . ." Id., 576–77.

Thus, neither the allegations nor the undisputed facts "establish[ed] that [Kiriaka's] injury was caused by Lipscomb's movement of the van or by a circumstance following from its movement. The accident causing Kiriaka's injury was removed from Lipscomb's prior movement or operation of the vehicle. Lipscomb parked the truck by the side of the road. Kiriaka alighted from it. Kiriaka then proceeded, on his own, unrelated to the operation of the truck, to cross the highway where he was struck by a passing vehicle. Kiriaka's actions which resulted in his injuries were removed in fact and law from the operation of the company van. 'Operation' of a motor vehicle connotes the control and direction of it, the activity of an 'operator' or 'driver' licensed for that purpose. The exception to § 31-293a relates to injury causally connected to the control and direction of the employer's vehicle. In the undisputed facts before the trial court, the accidental injuries to Kiriaka were unconnected and unrelated to Lipscomb's control, direction and movement of [the employer's] van. His

injuries admittedly arose out of and in the course of his employment in the circumstances of the case, but they cannot be extended to reach the exception to § 31-293a. His workers' compensation benefits are the exclusive remedy available to him under that provision of the act." Id., 579–80.

Here, the accident causing Rodriguez' injuries was removed from the defendant's prior operation of the vehicle. It is alleged that the defendant parked the cruiser and exited from it and that, subsequently, the K-9 dog alighted from it through an open window and proceeded to attack Rodriguez. Rodriguez' injuries were not causally connected to the control, direction, and movement of the police cruiser. See *Colangelo* v. *Heckelman*, supra, 279 Conn. 186 (court has construed "the term operation of a motor vehicle in § 31-293a as not including activities unrelated to the movement of [a] vehicle" [internal quotation marks omitted]).

"[A]pplying the rule of statutory construction that [the court] strictly construe[s] exceptions, as articulated previously, [the court] cannot say that the plaintiff[s] ha[ve] shown that [their] case clearly fits within the motor vehicle exception." *Suprenant* v. *Burlingham*, supra, 64 Conn. App. 415. As a matter of law, the plaintiffs' negligence allegations are insufficient to come within the exceptions in § 31-293a to workers' compensation exclusivity.

Since a dog bite action pursuant to § 22-357 is not one of the exceptions enumerated under § 31-293a, Count Two is also barred. See *Roy* v. *Bachmann*, 121 Conn. App. 220, 224–25, 994 A.2d 676 (2010).

As discussed above, Rodriguez' claims against his fellow employee are precluded by workers' compensation exclusivity. Accordingly, the derivative loss of consortium claims are also barred. See *Colangelo* v. *Heckelman*, supra, 279 Conn. 183–84; *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 298–99, 627 A.2d 1288 (1993).

In view of the court's determination that the plaintiffs' claims are barred by workers' compensation exclusivity, the court need not address the parties' arguments concerning governmental immunity.

### CONCLUSION

For the reasons stated above, the defendant's motion to strike is granted. It is so ordered.

* Affirmed. *Rodriguez* v. *Clark*, 162 Conn. App. 785,      A.3d      (2016).

[1] For ease of reference, the court refers to plaintiff Alex Rodriguez as Rodriguez.

[2] General Statutes § 31-293a provides, in relevant part, "If an employee . . . has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. For purposes of this section, contractors' mobile equipment

such as bulldozers, powershovels, rollers, graders or scrapers, farm machinery, cranes, diggers, forklifts, pumps, generators, air compressors, drills or other similar equipment designed for use principally off public roads are not 'motor vehicles' if the claimed injury involving such equipment occurred at the worksite on or after October 1, 1983. . . ."

[3] General Statutes § 14-1 (53) provides, in relevant part: " 'Motor vehicle' means any vehicle propelled or drawn by any nonmuscular power . . . ."

[4] General Statutes § 52-556, which concerns injuries caused by motor vehicles owned by the state, provides: "Any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury."

—————————————————