535 A.2d 626

**Mary Jean GLICK and David Lynch, Jr., Appellants,**

v.

**MARTIN AND MOHLER, INC., Lantz Builders, Inc., and High Construction, Inc.**

Superior Court of Pennsylvania.

Argued Feb. 12, 1987.

Filed Dec. 31, 1987.

Joseph A. McIntyre, Lancaster, for appellants.

Allan Molotsky, Philadelphia, for Martin and Mohler, appellees.

Joel D. Smith, Lancaster, for Lantz, appellees.

Before CIRILLO, President Judge *, and BECK and HESTER, JJ.

BECK, Judge:

In this appeal we consider whether construction companies working on a property can be held liable for damages resulting from a criminal attack occurring on the property. We find that appellants Mary Jean Glick and her husband, David Lynch, Jr., failed to state a cause of action against appellee construction companies. We therefore affirm the order of the trial court sustaining appellees' demurrer and dismissing appellants' complaint.[1]

In considering preliminary objections in the nature of a demurrer, we apply the following standards:

---

* President Judge Cirillo has been substituted on this panel for the late Justice Roberts, who originally heard oral argument.

1. In a companion case to this one, *Glick v. Olde Town Lancaster,* 369 Pa.Super. 419, 535 A.2d 621 (1987) we found that appellants failed to state a cause of action against the owner of the property and associated parties for the allegedly negligent breach of their promise to the city to resecure the vacant building in which Mary Jean Glick was raped.

[P]reliminary objections in the nature of a demurrer admit as true all well and clearly pleaded material, factual averments and all inferences fairly deducible therefrom. Conclusions of law and unjustified inferences are not admitted by the pleading. Starting from this point of reference the complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought. If such is the case, the demurrer may not be sustained. On the other hand, where the complaint fails to set forth a cause of action, a preliminary objection in the nature of a demurrer is properly sustained.

*Abarbanel v. Weber*, 340 Pa.Super. 473, 479, 490 A.2d 877, 880 (1985) (citations omitted).

We therefore take as true the following facts alleged in appellants' complaint:

5. On or about September 2, 1977, Olde Town Lancaster, Inc. purchased numerous dwellings located in and around the Historic District of the City of Lancaster, including those dwellings located at 123–125 South Christian Street.

6. Olde Town Lancaster, Inc. entered into a written contract with defendant, Martin and Mohler, Inc., whereby defendant, Martin and Mohler, Inc., agreed to furnish all materials and perform all the labor necessary for the renovation and construction of buildings in the Olde Town Lancaster project.

7. Under the terms and conditions of the contract, defendant, Martin and Mohler, Inc., agreed to accept responsibility for initiating, maintaining and supervising all safety precautions and programs in connection with the Olde Town Lancaster project.

8. On or about 1979–1980, defendant, Lantz Builders, Inc., became involved as a contractor in the Olde Town Lancaster project.

9. Subsequent to 1979–1980, defendant, Lantz Builders, Inc., changed its name to High Construction, Inc.

10. Prior to March 25, 1984, the defendants knew, or should have known, that this location was being frequented by itinerants, and other individuals who used the premises in order to carry on illicit activities, which were, or could have been, dangerous to the public.

11. Prior to March 25, 1984, the defendants unsuccessfully attempted to secure the dwellings to prevent entrance into them by partially boarding up windows and doors with material which was inadequate to prevent entrance.

12. Prior to March 25, 1984, the defendants knew, or should have known, that its prior attempt(s) to secure the dwellings were unsuccessful and that the dwellings continued to be used by these individuals for illicit purposes, which were, or could have been, dangerous to the public.

13. On Sunday, March 25, 1984, at approximately 9:00 a.m., plaintiff, Mary Jean Glick, was accosted by a still unknown individual on the first block of East Vine Street while she was walking to church.

14. The aforesaid individual forced plaintiff, Mary Jean Glick, to proceed west on Vine Street then turn south on Christian Street, proceed down Christian Street to the aforesaid dwellings located at 123–125 South Christian Street. Plaintiff was then forced to enter the dwelling from the rear through an unsecured, open doorway. Thereafter, she was assaulted, battered, and raped for approximately a two hour period of time.

Appellants aver that the incident described in the complaint caused them physical and emotional distress and that the injuries were a direct result of the negligence of the appellees.

On appeal, appellants assert that the trial court erred in finding that appellants' complaint failed to state a cause of action. Appellants base their cause of action on the Restatement (Second) of Torts (1965), sections 323, 324A, and 321. We consider seriatim these three sections of the Restatement.

■ Appellants first contend that section 323 of the Restatement (Second) of Torts establishes a cause of action. We disagree. Section 323 provides:

§ 323. Negligent Performance of Undertaking to Render Services.

One who undertakes, gratuitously or for consideration, to render services *to another* which he should recognize as necessary for the protection *of the other's* person or things, is subject to liability *to the other* for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

(Emphasis added). Section 323 has been adopted by our courts as the law in Pennsylvania. *Gradel v. Inouye*, 491 Pa. 534, 421 A.2d 674 (1980).

Section 323 is clearly inapplicable to the instant case. This section gives a cause of action only to the party to whom the promise to render services was made. The averments in the complaint concern an undertaking by appellee construction companies to render services to Olde Town Lancaster; there are no averments that appellees undertook to render services to appellants. Appellants, therefore, have failed to state a cause of action based on this section.

■ Appellants next claim that section 324A establishes a cause of action. We must again disagree. Section 324A provides:

§ 324A. Liability to Third Person for Negligent Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for

physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Section 324A has also been adopted by our courts. *Cantwell v. Allegheny County*, 506 Pa. 35, 483 A.2d 1350 (1984).

In the instant case, we look to see whether appellees undertook to secure against entry the building in which appellant Glick was assaulted. We find that they did not.

Appellants allege that all three appellees "negligently perform[ed] a duty which [they] had undertaken to secure the dwelling." However, appellants do not allege, as they did in the companion to this case, *Glick v. Olde Town Lancaster*, 369 Pa.Super. 419, 535 A.2d 621 (1987) that appellees here made any specific promise to the city or anyone else to resecure the vacant building. The only undertaking to which appellants' complaint refers is an undertaking by appellee construction companies to "initiate, maintain, and supervise all safety precautions and programs in connection with the Olde Town Lancaster project," an obligation apparently derived from appellees' contract with Olde Town Lancaster. Appellants further allege that appellees breached that duty.

We find that appellees' contractual obligation to "initiate, maintain, and supervise all safety precautions and programs in connection with the Olde Town Lancaster project" cannot be interpreted as a promise to secure the buildings against criminal entry. This clause, read in its context of a construction contract with Olde Town Lancaster, merely signifies an undertaking by appellees to take measures to protect their workers' on-the-job safety while they are working on the project. Boarding up doors and windows to secure the building against entry during a hiatus in the

project cannot be said to be within the scope of appellees' undertaking. Since appellees did not undertake to secure the building against entry, they cannot be said to have a duty to appellants and thereby be liable for the allegedly negligent performance of such an undertaking.

Finally, appellants contend that appellees are liable under section 321 of the Restatement (Second) of Torts. Section 321 provides:

§ 321. Duty to Act When Prior Conduct is Found to be Dangerous

(1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.

(2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk.

The Supreme Court of Pennsylvania has never adopted section 321 as the law of Pennsylvania [2], and as the intermediate appellate court we decline to do so. Section 321 fails to include any concept of to whom the duty is owed, which is a necessary element of a cause of action sounding in tort in Pennsylvania. *Morena v. South Hills Health Systems*, 501 Pa. 634, 462 A.2d 680 (1983). Secondly, the description of the prohibited conduct (that which poses "unreasonable risk") is too vague to permit principled application of the section. *Cf. Kazatsky v. King David*

2. The application of section 321 has been considered by our Supreme Court, but was ultimately left undecided. In *Glass v. Freeman*, 430 Pa. 21, 240 A.2d 825 (1968), our Supreme Court considered the plaintiff's allegation that defendant was negligent in failing to shout a warning when he saw a tractor rolling toward the plaintiff, and noted, "The question of whether or not [defendant] had an affirmative duty to warn plaintiff is not without difficulty. See generally, 2 Harper & James, The Law of Torts § 18.6 (1956); Restatement 2d, Torts § 321 (1954)." 430 Pa. at 28, n. 2, 240 A.2d at 829, n. 2. The court found it unnecessary to decide this question, as defendant was found to be negligent on other grounds.

*Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987) (court declined to adopt section 46 of the Restatement (Second) of Torts, "Outrageous Conduct Causing Severe Emotional Distress" because the definition of "outrageous" is too nebulous).

Our finding that section 321 lacks the specificity necessary to permit principled application of the section is confirmed by other jurisdictions' treatment of the section. Most cases involving section 321 cite it merely as additional authority for a result reached under traditional duty analysis. Section 321 itself is irrelevant to the outcome of the case. *See Bangor & A.R. Co. v. Ship Fernview,* 455 F.Supp. 1043 (D.C.Me.1978) (chemical company owed duty to the public to take reasonable care to prevent release of sulfuric acid cloud, and was held liable for damages caused by failure to do so); *Allen v. United States,* 370 F.Supp. 992 (E.D.Mo.1973) (air traffic controllers owed duty to passengers of airplane injured in collision with another plane following controllers' ambiguous radio communications, and were held liable for their failure to clear up the ambiguity in communications); *Parish v. Truman,* 124 Ariz. 228, 603 P.2d 120 (Ct.App.1979) (landowner owed no duty to social invitee to protect him from criminal acts of third parties on his land and was held not liable); *Geremia v. State,* 58 Hawaii 502, 573 P.2d 107 (1977) (state owned and ran parking lot near natural pool in which boy drowned; being neither the owner nor occupier of the pool itself, the state owed no duty to the boy and was held not liable); *Schicker v. Leick,* 40 Wis.2d 295, 162 N.W.2d 66 (1968) (landowner-farmer owed duty to persons travelling on adjoining highway to perform in a non-negligent manner his undertaking to clean up mud from his land that had seeped onto the highway and was held liable for his failure to do so).

Other courts, most notably the California appellate courts, have explicitly refused to adopt section 321. In *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), the California

Supreme Court considered whether section 321 should be applied to find the police liable for releasing from custody a mental patient who, after being released, killed Ms. Tarasoff. The court specifically refused to find such a duty based on the broad terms of section 321, on the grounds that to do so would raise "difficult problems of causation and of public policy." [3] Following *Tarasoff,* application of section 321 was raised and dismissed in two California cases, one against a county institution that released a mental patient who subsequently attacked the plaintiff, *Thompson v. County of Alameda,* 27 Cal.2d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980), the other against police officers who failed to warn the plaintiff that the man who attacked her was under suspicion for a series of assaults. *Davidson v. City of Westminster,* 32 Cal.2d 197, 185 Cal. Rptr. 252, 649 P.2d 894 (1982).

Only two courts have found that plaintiff stated a cause of action based solely on the application of section 321. Neither of these cases enunciates guidelines for a principled application of section 321; both merely use section 321 as citable authority for their own adoption of a new cause of action based on public policy.

In *U.S. v. Furumizo,* 381 F.2d 965 (9th Cir.1967), air traffic controllers were found liable to passengers of a plane that crashed in its attempt to take off in the wake turbulence of a larger plane. The controllers gave a warning to the pilot of the small plane regarding turbulence, in compliance with their manual and regulations; the plane took off soon after the warning, in apparent disregard of it. The Ninth Circuit Court of Appeals found that the air traffic controllers had a duty to give a further warning or to take further action, on the grounds that "[t]heir job requires that they act in the interest of safety." 381 F.2d at 968.

---

3. The psychotherapist in *Tarasoff* was found to have owed a duty to the decedent under other sections of the Restatement; section 321 was not analyzed with regard to him.

Also relying on section 321, the West Virginia Supreme Court found an employer liable to plaintiffs injured in a car crash with defendant's employee. *Robertson v. LeMaster*, 301 S.E.2d 563 (W.Va.1983). Defendant employer had required the employee to work 27 hours without rest, and then drove the employee to his car. The court found that the employer was negligent in failing to provide rest facilities or transportation to the employee's home. The court noted:

> Throughout the history of Anglo–American jurisprudence the concept of duty has evolved in response to the social aims of civilized society ... [The] emphasis on duty has been shifted towards the goal of compensating victims of tortious conduct.

301 S.E.2d at 566.

Section 321's broad prohibition against action posing "unreasonable risk" gives no indication of what specific behavior is unacceptable. Tort law's ability to shape behavior in accordance with the evolution of societal aims depends precisely on its capacity to distinguish between acceptable and prohibited behavior and to penalize the latter. Therefore, any new causes of action must be clearly defined. Overly broad theories of liability such as the one advanced in section 321 maximize societal compensation of injured persons, but do not discourage harmful conduct and prevent injury to future parties. To view tort law as merely a scheme of compensating victims is to strip it of its more important function of influencing behavior. We therefore decline to adopt section 321 of the Restatement (Second) of Torts as the law of Pennsylvania. We have analyzed the arguments advanced by appellants and have found that appellants failed to state a cause of action against appellee construction companies. We therefore affirm the order of the trial court sustaining appellees' demurrer and dismissing appellants' complaint.

Order affirmed.