Bradley J. DOMAGALA, Respondent,

v.

Eric ROLLAND, et al., Appellants.

No. A09–1945.

Supreme Court of Minnesota.

Oct. 26, 2011.

Thomas J. Weidner, Kevin S. Sandstrom, Eckberg, Lammers, Briggs, Wolff & Vierling, P.L.L.P., Stillwater, MN, for respondent.

Charles E. Lundberg, David E. Camarotto, Bassford Remele, P.A., Minneapolis, MN, for appellants.

OPINION

ANDERSON, G. BARRY, Justice.

This negligence case requires us to decide whether the failure to warn others of foreseeable harm created by the defendant's conduct can constitute negligence absent a special relationship between the parties. A jury found appellants Eric Rolland and Rolland Building Corporation not negligent in an incident in which a skid loader attachment fell on respondent

Bradley Domagala's foot, resulting in the amputation of three toes. The court of appeals reversed and remanded the case on the ground that the district court erred when it instructed the jury that Rolland had no duty to warn or protect Domagala. The court of appeals recognized a distinction between the specific duty to warn that arises in the context of a special relationship and giving a warning as an exercise of the general duty of reasonable care. Rolland appeals this decision, arguing that the court of appeals has created a new exception to our special relationship doctrine. We affirm and remand this case for a new trial.

In the spring of 2003 respondent Bradley Domagala engaged appellants Eric Rolland and Rolland Building Corp. ("Rolland") to perform landscaping services on Domagala's property. Domagala's yard had a rough grade and Domagala wanted a finished grade to correct drainage issues and accommodate sod or seed. Because Rolland and Domagala were related through marriage, Rolland did not charge Domagala for the work.

On June 23, 2003, Rolland arrived at Domagala's residence with a New Holland 985X skid loader to perform the agreed-upon landscaping. Rolland had approximately eight years of experience operating a skid loader. Because Domagala did not have any knowledge or expertise in the maintenance or operation of skid loaders, he elected to pick up rocks and debris around the yard. Rolland and Domagala used hand signals to communicate with one another as they worked because the skid loader was noisy. When Domagala needed to speak with Rolland, he would approach the skid loader with his hands raised and Rolland would mirror this action, indicating that Rolland was not touching the skid loader's controls.

Rolland brought three attachments for the skid loader—forks, a bucket, and a leveling bar. Switching between attachments was a laborious process that required a great deal of maneuvering on Rolland's part. A key step in the process involved two release levers that latched the attachment to the loader. To release the attachment, Rolland lifted both levers, which removed pins that held the attachment to the skid loader. To fasten a new attachment, Rolland would maneuver the skid loader flush with the new attachment and then lower the levers to secure the pins. Domagala observed this process at least twice and admitted that he knew the levers played a role in releasing the attachments from the skid loader.

It was not uncommon for debris to jam the levers, preventing Rolland from lifting the levers to release an attachment. When this happened to only one lever, Rolland would raise the lever that did work, return to the controls, and "flutter the hydraulics" so that the attachment shook and dislodged the debris. Releasing one lever "created extra play" for shaking loose the debris. Rolland admitted that shaking the attachment when it was connected to the skid loader by a single pin was "very" dangerous.

At some point during the evening on June 23, 2003, Rolland was preparing to switch from the bucket attachment to the leveling bar. Debris was lodged in one of the levers, so Rolland released the other lever and began fluttering the hydraulics with the bucket raised 10 to 20 inches off the ground. While Rolland was shaking the bucket to dislodge the debris, Domagala noticed a rock jammed in the lever. Domagala approached the skid loader with his hands raised, and Rolland raised his own hands in response. Without any further communication between the parties, Domagala removed the rock from the

lever. Domagala then released the previously-jammed lever and the bucket fell on Domagala's left foot. The injury eventually resulted in the amputation of three of Domagala's toes.

Domagala sued Rolland, alleging that Rolland operated the skid loader in a negligent and careless manner and "failed to warn [Domagala] of the dangers associated with trying to unlatch the Skid Steer's bucket." Rolland moved for summary judgment on the grounds that Rolland did not owe Domagala a duty of care and that recovery was barred by the doctrine of primary assumption of the risk. The district court denied the summary judgment motion and reached three conclusions relevant to this appeal. First, the court found that the parties were not in a special relationship and as such, Rolland did not have a duty to protect Domagala. The court also concluded that Rolland had no duty to warn Domagala of impending dangers associated with the skid loader because the parties were not alleging a special relationship or relying on products liability law. But the court then relied on Restatement (Second) Torts § 321 (1965) to conclude that Rolland owed Domagala a duty of reasonable care because Rolland's operation of the skid loader created an unreasonable risk of physical harm to another.

Based on the district court's ruling, Rolland requested that the court instruct the jury that Rolland had no duty to warn and no duty to protect Domagala. These special instructions stated:

*No Duty to Protect*

A person generally has no duty to act for the protection of another person. A legal duty to protect will be found to exist only if there is a special relationship between the parties and the risk is foreseeable. The Court has ruled, as a matter of law, that no duty to protect exists in this matter and you must not consider such a duty in your deliberation in this case.

*No Duty to Warn*

A special relationship giving rise to a duty to warn is only found on the part of common carriers, innkeepers, possessors of land who hold it open to the public, and persons who have custody of another person under circumstances in which that other person is deprived of normal opportunities of self-protection. The Court has ruled, as a matter of law, that no duty to warn exists in this matter and you must not consider such a duty in your deliberation in this case.

Domagala objected to the proposed instructions on the grounds that they were "highly prejudicial" and "create[d] confusion as to whether a warning could be inclusive of the duty of reasonable care." The court overruled Domagala's objection and read the special instructions to the jury. The court also gave Domagala's requested instructions mirroring the language of Restatement (Second) Torts § 321 and the pattern jury instruction for negligence and reasonable care:

*Duty of Care Based on the Creation of a Dangerous Situation*

If a person created an unreasonable risk of causing physical harm to another, that person has a duty to exercise reasonable care to prevent the risk from taking effect. This duty applies, even though at the time of the creation of the unreasonable risk, the person had no reason to believe that it would involve such a risk.

*Negligence and Reasonable Care—Basic Definition*

Reasonable care is the care a reasonable person would use in the same or similar circumstances. Negligence is the failure to use reasonable care. Ask yourself what a reasonable person would have

done in these circumstances. Negligence occurs when a person does something a reasonable person would not do, or fails to do something a reasonable person would do.

*See* Restatement (Second) Torts § 321; 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil,* CIVJIG 25.10 (5th ed.2006).

During his closing argument, Domagala focused primarily on the definition of negligence and whether Rolland "failed to act as a reasonable person would." Domagala also attempted to educate the jury about the source of the language in the jury instructions by explaining special relationships in negligence law. The district court found Domagala's closing arguments objectionable. Pursuant to a previous ruling, the court told the jury, "[B]ecause of things that have been said, and issues that have been raised, ... I am going to reread some information I previously gave you to make sure that you are, in fact, following the instructions, and the law as I give them to you." The district court then reread all of the instructions quoted above except the no-duty-to-protect instruction.

During deliberations, the jury asked the district court, "Does 'no duty to warn' mean that the defendant had no obligation to try to keep the plaintiff away from the skid loader?" The court replied, "I cannot give you further instruction on this. Please rely on the jury instructions provided to you." After deliberating for six hours, seven jurors returned a verdict in favor of Rolland. On the special verdict form, the jurors found that (1) Rolland was not negligent in the operation of the skid loader, (2) Domagala was negligent at the time of the incident, (3) a sum of $89,698.48 would compensate Domagala for past damages, and (4) a sum of $116,900 would compensate Domagala for future damages.

Domagala moved the district court for a new trial pursuant to Minn. R. Civ. P. 59.01(f), alleging it was an error of law for the court to give the two special jury instructions Rolland requested. The district court denied Domagala's motion.

Domagala appealed to the Minnesota Court of Appeals, arguing that the district court (1) erred by concluding as a matter of law that Rolland had no duty to warn Domagala and (2) abused its discretion when it instructed the jury that Rolland had no duty to warn and no duty to protect Domagala. The court of appeals affirmed in part, reversed in part, and remanded the case for a new trial. *Domagala v. Rolland,* 787 N.W.2d 662, 675 (Minn.App. 2010). The court of appeals affirmed the district court's holding that Rolland "did not have a specific legal duty to warn." *Id.* at 669. But the court of appeals looked to case law and Restatement (Second) of Torts § 321 and concluded that "[t]he exercise of reasonable care upon the creation of a dangerous situation may include giving a warning to anyone placed at risk." *Domagala,* 787 N.W.2d at 672. The court thus noted the distinction between a defendant's specific duty to warn, which arises in the context of a special relationship or products liability, and a general duty to act with reasonable care. *See id.* Based on the conclusion that the latter duty did exist in this case, the court held that the special jury instructions "confused the negligence principles at issue" because "absent the no-duty-to-warn instruction, the jury could have found respondent's exercise of reasonable care included shouting a warning to appellant or attempting to wave appellant back." *Id.* at 673. Highlighting the jury's question about the no-duty-to-warn instruction during deliberations, the court concluded that the instruction caused substantial prejudice to Domagala and remanded the case for a new trial. *Id.* at

675. We granted Rolland's petition for review.

I.

Negligence is generally defined as the failure "to exercise such care as persons of ordinary prudence usually exercise under such circumstances." *Flom v. Flom*, 291 N.W.2d 914, 916 (Minn.1980) (citations omitted). To recover for a claim of negligence, a plaintiff must prove (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury. *See Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn.2001) (citing *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn.1995)). Generally, a defendant's duty to a plaintiff is a threshold question because "[i]n the absence of a legal duty, the negligence claim fails." *Gilbertson v. Leininger*, 599 N.W.2d 127, 130 (Minn.1999) (citation omitted); *see also State Farm Fire & Cas. v. Aquila Inc.*, 718 N.W.2d 879, 887 (Minn. 2006) (stating that plaintiffs failed to present a prima facie case for negligence when they could not establish that defendants owed a duty of reasonable care). In this case, the existence of a duty presents a threshold requirement because the issue before us—whether a person can exercise reasonable care by giving a warning—is essentially a question of breach of duty. Because a defendant cannot breach a nonexistent duty, we must first determine whether Rolland owed Domagala some legal duty of care. The existence of a duty of care is a question of law that we review de novo. *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn.2007).

A.

The ultimate issue for our consideration is whether the district court abused its discretion when it gave the jury special instructions stating that Rolland had no duty to warn and no duty to protect Domagala. Because jury instructions must correctly articulate the applicable law, we must first decide whether Rolland owed a duty to warn Domagala of the danger posed by the bucket attachment hanging from the skid loader on one pin. The phrase "duty to warn" is assigned different meanings by the parties and in Minnesota case law. In this case, we are asked to formally recognize and clarify the distinction between the specific duty to warn that arises when the parties stand in a special relationship and the duty to warn that constitutes an exercise of the general duty of reasonable care.

The distinction between the specific duty to warn and exercising reasonable care by giving a warning likely stems from the historical divergence of liability for misfeasance and nonfeasance. Misfeasance is "active misconduct working positive injury to others" while nonfeasance, or nonaction, is "passive inaction or a failure to take steps to protect [others] from harm." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56 (5th ed.1984); *see also H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 159 N.E. 896, 898 (1928) ("The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all. A time-honored formula often phrases the distinction as one between misfeasance and nonfeasance."). We have recognized the confounding complexity of characterizing a defendant's action or inaction as misfeasance or nonfeasance. *See Brower v. N. Pac. Ry. Co.*, 109 Minn. 385, 388, 124 N.W. 10, 11 (1910) ("[T]he distinction between misfeasance and nonfeasance is sometimes fanciful."). But we have continued to recognize that generally "[i]n law, we are not our brother's keeper." *Lundgren v. Fultz*,

354 N.W.2d 25, 27 (Minn.1984). Inaction by a defendant—such as a failure to warn—constitutes negligence only when the defendant has a duty to act for the protection of others. *See Ruberg v. Skelly Oil Co.,* 297 N.W.2d 746, 750 (Minn.1980); Dan B. Dobbs, *The Law of Torts* § 314 (2000) ("[T]he rule [of nonaction] is embedded in the question whether the defendant owes a duty to protect the plaintiff from harms inflicted by others.")

A duty to act with reasonable care for the protection of others arises in two instances implicated in this case. First, echoing the principles of liability for misfeasance, general negligence law imposes a general duty of reasonable care when the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff. *See* 1 J.D. Lee & Barry A. Lindahl, *Modern Tort Law: Liability & Litigation* § 3.48 (2d ed.2003).

■ Second, a defendant owes a duty to protect a plaintiff when action by someone other than the defendant creates a foreseeable risk of harm to the plaintiff and the defendant and plaintiff stand in a special relationship. *See Bjerke,* 742 N.W.2d at 665. In other words, although a defendant generally does not have a duty "to warn or protect others from harm caused by a third party's conduct," *H.B. ex rel. Clark v. Whittemore,* 552 N.W.2d 705, 707 (Minn. 1996), an exception to this rule exists when the parties are in a special relationship and the harm to the plaintiff is foreseeable. *Compare Bjerke,* 742 N.W.2d at 665 (holding that a duty to protect an invitee from sexual abuse by a third party could be found because there was a special relationship between the homeowner and invitee), *with H.B.,* 552 N.W.2d at 708–09 (holding that a trailer park manager did not owe a duty to protect the minor plaintiffs from sexual abuse by a third party because no special relationship existed between the parties), *and Donaldson v. Young Women's Christian Ass'n of Duluth,* 539 N.W.2d 789, 793 (Minn.1995) (holding that the defendant did not have a legal duty to protect an individual from self-inflicted harm because there was no special relationship between the parties). Our case law discussing liability premised on a special relationship comprises a legal doctrine "separate and distinct" from other forms of negligence. *Louis v. Louis,* 636 N.W.2d 314, 320 (Minn.2001).

We have recognized a specific legal duty to warn under the special relationship doctrine.[1] *See, e.g., Cairl v. State,* 323 N.W.2d 20, 25 n. 7 (Minn.1982) ("[W]hen we speak of a duty to warn we speak in terms of having first found the requisite special relationship to exist."). And in the absence of a special relationship, we have declined to impose a specific duty to warn. *See, e.g., Harper v. Herman,* 499 N.W.2d 472, 475 (Minn.1993) (holding that a boat owner had no duty to warn a social guest of shallow water-depth when the parties were not in a special relationship).

In this case, the parties agree that they were not in a special relationship at the time of the incident. Rolland thus relies on our decision in *Harper* to argue that he owed no duty to warn Domagala under any formulation of the duty to warn. In *Harper,* a guest on a boat dove headfirst into shallow lake water and severed his spinal cord, rendering him a quadriplegic. *Id.* at

---

1. We have also recognized a duty to warn in products liability cases. *See Gray v. Badger Mining Corp.,* 676 N.W.2d 268, 274 (Minn. 2004) ("[A] supplier has a duty to warn end users of a dangerous product if it is reasonably foreseeable that an injury could occur in its use."). Because this case does not involve an action for products liability, we confine our discussion to a comparison of the duty to warn arising out of a special relationship and the general negligence duty of reasonable care.

473–74. The guest sued the boat owner for negligently failing to warn the guest of the shallow water depth. *Id.* at 474. We declined to find liability on the part of the boat owner because there was no special relationship between the parties. *Id.* In so holding, we cited to *Delgado v. Lohmar*, 289 N.W.2d 479 (Minn.1979), our seminal special relationship case:

> We have previously stated that an affirmative duty to act only arises when a special relationship exists between the parties. "The fact that an actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action * * * unless a special relationship exists * * * between the actor and the other which gives the other the right to protection."

*Harper*, 499 N.W.2d at 474 (quoting *Delgado*, 289 N.W.2d at 483) (alterations in original). A literal application of this rule would support Rolland's argument that a defendant has no duty to warn or protect another person in the absence of a special relationship between the parties.

■ But to hold that *Harper* prohibits a breach of the duty of reasonable care based on a failure to warn, in addition to the imposition of a specific duty to warn absent a special relationship, would require us to read *Harper* out of context and apply its holding too broadly. A correct application of our analysis in *Harper* must be mindful of the historical distinction between misfeasance stemming from an actor's own conduct and nonfeasance when someone other than the defendant creates the harm. In fact, when quoting *Delgado* in *Harper*, we omitted language making that very distinction. The full quotation from *Delgado* states:

> The fact that an actor realizes or should realize that action on his part is necessary for another's aid or protection does

not of itself impose upon him a duty to take such action. *Ordinarily, there is no duty to control the conduct of a third person to prevent him from causing physical harm to another* unless a special relationship exists, either between the actor and the third person which imposes a duty to control, or between the actor and the other which gives the other the right to protection.

289 N.W.2d at 483 (emphasis added) (citations omitted). The harm to the plaintiff in *Harper* was not caused by the defendant boat-owner's conduct. The act of anchoring a boat in shallow water does not create a foreseeable risk of harm to others. It was the plaintiff—a person other than the defendant—who acted in a manner that created a risk of harm when the he dove headfirst into water of an unknown depth. *See Harper*, 499 N.W.2d at 475. In light of these facts from *Harper*, our rule in that case should be read to say that "an affirmative duty to act [to warn plaintiffs of harm created by someone other than the defendant] only arises when a special relationship exists between the parties." *Id.* at 474. Applying this rule to the present case, Rolland did not have a specific duty to warn Domagala of any danger created by others or Domagala himself because the parties were not in a special relationship. But Rolland could still owe a duty to conform his own conduct to a standard of reasonable care.

### B.

■ Having held that Rolland did not owe Domagala a specific duty to warn as articulated in our cases discussing special relationships, we must next determine whether Rolland owed a general duty of reasonable care. The district court and the court of appeals held that Rolland owed a duty of reasonable care because he created an unreasonable risk of harm when he shook the skid loader's bucket

attachment while it was hanging by one pin. *Domagala*, 787 N.W.2d at 666, 675. Both courts relied on Restatement (Second) of Torts § 321, which states:

> (1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.
> (2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk.

*Domagala*, 787 N.W.2d at 672. But we have not adopted this provision of the Restatement and decline to do so now.

Section 321 has received heavy criticism from multiple jurisdictions.[2] Courts rejecting section 321 have criticized the Restatement provision for vagueness and over-inclusiveness. *See Brewster v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 361 Ill. App.3d 32, 296 Ill.Dec. 884, 836 N.E.2d 635, 639–40 (2005). In its opinion rejecting the application of section 321, the Pennsylvania Superior Court stated: "Tort law's ability to shape behavior in accordance with the evolution of societal aims depends precisely on its capacity to distinguish between acceptable and prohibited behavior and to penalize the latter. Therefore, any new causes of action must be clearly defined." *Glick v. Martin & Mohler, Inc.*, 369 Pa.Super. 428, 535 A.2d 626, 630–31 (1987); *see also Murillo v. Seymour Ambulance Ass'n, Inc.*, 264 Conn. 474, 823 A.2d 1202, 1207 (2003) (rejecting section 321 because it does not address public policy concerns considered to be "an essential component of [the] traditional duty analysis" and holding that a hospital had no duty to "warn an invitee that he or she might have an adverse reaction to witnessing a medical procedure"); *Brewster*, 296 Ill.Dec. 884, 836

---

**2.** Our research reveals that few state supreme courts have favorably cited Restatement (Second) of Torts § 321 in a majority opinion. *See Winschel v. Brown*, 171 P.3d 142, 147 n. 13 (Alaska 2007); *Walls v. Oxford Mgmt. Co., Inc.*, 137 N.H. 653, 633 A.2d 103, 106 (1993); *Faile v. S.C. Dep't of Juvenile Justice*, 350 S.C. 315, 566 S.E.2d 536, 546 n. 8 (2002); *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563, 567 (1983); *Schicker v. Leick*, 40 Wis.2d 295, 162 N.W.2d 66, 71 (1968). And one of these courts relied on section 321 as the source of a legal duty that exists elsewhere in negligence law—namely a landlord's duty to tenants. *See Walls*, 633 A.2d at 106. Several courts have expressed disfavor for the Restatement by explicitly rejecting section 321, declining to extend its terms, or expressly distinguishing its provisions on factual grounds. *See, e.g., Tarasoff v. Regents of the Univ. of Cal.*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 349 n. 18 (1976) (refusing to use section 321 to find the police liable for releasing from custody a mental health patient who subsequently murdered a woman); *Murillo v. Seymour Ambulance Ass'n, Inc.*, 264 Conn. 474, 823 A.2d 1202, 1207 (2003) (declining to adopt section 321 because it was inconsistent with that court's practice of considering public policy when determining whether a duty exists); *Commonwealth v. Levesque*, 436 Mass. 443, 766 N.E.2d 50, 57 (2002) ("[W]e have yet to recognize explicitly § 321 as a basis for civil negligence."); *State v. Lisa*, 391 N.J.Super. 556, 919 A.2d 145, 159 (N.J.Super.Ct.App.Div.2007) (stating that New Jersey case law cannot be read as adopting section 321); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex.1997) (declining to adopt section 321 in tobacco litigation); *accord Blackmon v. Am. Home Prods. Corp.*, 346 F.Supp.2d 907, 914 (S.D.Tex.2004) (stating that "Texas has specifically rejected" section 321); *Brewster v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 361 Ill.App.3d 32, 296 Ill.Dec. 884, 836 N.E.2d 635, 639 (2005) (declining to adopt section 321 because "[t]his section of the Restatement has been criticized for its vagueness and seemingly limitless scope"); *Glick v. Martin & Mohler, Inc.*, 369 Pa.Super. 428, 535 A.2d 626, 629 (1987) (rejecting section 321 as a source of the duty of care and stating that "[m]ost cases involving section 321 cite it merely as additional authority for a result reached under [a] traditional duty analysis").

N.E.2d at 639–40 (citing *Glick*, 535 A.2d at 629–30, and declining to adopt section 321 as a source of tort liability). Because it is not necessary to adopt section 321 to recognize the duty imposed on Rolland or to resolve the issues before us, and because of the significant public policy concerns surrounding section 321, we decline at this time to adopt Restatement (Second) of Torts § 321 as a basis for imposing a duty of care in a negligence claim.

## C.

Although Rolland did not owe Domagala a duty to act with reasonable care pursuant to Restatement (Second) of Torts § 321, a duty can be imposed under other general negligence principles found in common law. Under common law principles, courts generally have considered the following factors when determining whether a defendant owed a duty of care: (1) the foreseeability of harm to the plaintiff, (2) the connection between the defendant's conduct and the injury suffered, (3) the moral blame attached to the defendant's conduct, (4) the policy of preventing future harm, and (5) the burden to the defendant and community of imposing a duty to exercise care with resulting liability for breach. *See* Lee & Lindahl, *supra* § 3.3. In Minnesota, the duty to exercise reasonable care arises from the probability or foreseeability of injury to the plaintiff. *See Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 888 (Minn.2010); *Flom*, 291 N.W.2d at 916; *Connolly v. Nicollet Hotel*, 254 Minn. 373, 381, 95 N.W.2d 657, 664 (1959). In other words, when a person acts in some manner that creates a foreseeable risk of injury to another, the actor is charged with an affirmative duty to exercise reasonable care to prevent his conduct from harming others. *See Foss v. Kincade*, 766 N.W.2d 317, 322–23 (Minn. 2009); Lee & Lindahl, *supra* § 3.48. To determine whether risk of injury from the defendant's conduct is foreseeable we "look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." *Foss*, 766 N.W.2d at 322 (citing *Whiteford ex rel. Whiteford v. Yamaha Motor Corp., U.S.A.*, 582 N.W.2d 916, 918 (Minn.1998)).

We have imposed a duty of reasonable care to prevent foreseeable harm when the defendant's conduct creates a dangerous situation. For example, in *Zylka v. Leikvoll*, 274 Minn. 435, 144 N.W.2d 358 (1966), two drivers, Bounds and Leikvoll, were found negligent in failing adequately to warn others or remove the hazard created by an accident in which they were participants. We noted that by "negligently creating a hazard on the highway, [Bounds] could reasonably foresee the risk of further damage" and thus owed a duty of reasonable care that arose from his participation in the creation of a "dangerous situation." *Id.* at 449, 144 N.W.2d at 368. *See also, e.g., Delgado*, 289 N.W.2d at 484 (holding that trespassing hunters "engaged in an extremely dangerous activity, hunting with high-powered guns," should have foreseen that "the landowner may come out and ask [them] to leave," thus imposing a duty of reasonable care); *Hollinbeck v. Downey*, 261 Minn. 481, 485–86, 113 N.W.2d 9, 12 (1962) (holding that it was foreseeable that a caddy was in "a place of danger" because "[i]t is common knowledge, even to nonplayers, that the force of a driven golf ball is intense"); *Landeen v. DeJung*, 219 Minn. 287, 290, 17 N.W.2d 648, 650–51 (1945) (holding that a driver owed a duty of reasonable care when he "create[d] a dangerous hazard" by suddenly stopping a large truck when the driver had knowledge that other cars were following him).

Foreseeability of injury is a threshold issue related to duty that is ordinarily "properly decided by the court prior to submitting the case to the jury." *Alholm v. Wilt*, 394 N.W.2d 488, 491 n. 5 (Minn.1986). In close cases, the issue of foreseeability should be submitted to the jury. *Whiteford ex. rel. Whiteford v. Yamaha Motor Corp., U.S.A.*, 582 N.W.2d 916, 918 (Minn.1998).[3] Because the parties do not allege, and the record does not suggest, that this case presents a close question of foreseeability, we review the issue de novo. To determine whether an injury was foreseeable, we look to the defendant's conduct and ask whether it was objectively reasonable to expect the specific danger causing the plaintiff's injury. *See id.* If the connection between the danger and the alleged negligent act "is too remote to impose liability as a matter of public policy, the courts then hold there is no duty." *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924–25 (Minn.1986). The test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether "the possibility of an accident was clear to the person of ordinary prudence." *Connolly*, 254 Minn. at 381–82, 95 N.W.2d at 664, *cited in Bjerke*, 742 N.W.2d at 667.

In a deposition, Rolland stated several times that safe operation of the skid loader required that the two pins holding attachments to the skid loader be "engaged fully." But on the evening Domagala was injured, Rolland admits that he unlatched one of the two pins holding the bucket attachment to the skid loader. He then let the bucket hang vertically by the remaining pin. Rolland explained that when the bucket hung vertically, none of its weight rested on the skid loader, thus transferring all of the bucket's weight to the pin. With all of the attachment's weight hanging on one pin, Rolland then began to shake the bucket with force sufficient to dislodge trapped debris. In the proceedings before the district court, Rolland never argued that using this "fluttering" technique to dislodge debris did not create a risk of harm to others. In fact, Rolland admitted more than once that he created a "very" dangerous situation because there was "a machine with a bucket in the air that was hanging on one pin." We conclude that a reasonable person could expect that forcefully shaking a bucket attachment that was hanging vertically from a skid loader by one pin could cause injury to those in proximity to the skid loader. Therefore, Rolland owed a

3. In *Foss v. Kincade*, 766 N.W.2d 317, 322–23 (Minn.2009), we correctly stated that "foreseeability of harm can be decided by the court as a matter of law when the issue is clear." But *Foss* suggests without explaining that "in most cases the question of foreseeability is an issue for the jury." *Id. Whiteford*, which *Foss* relies upon, articulates the principle of law which we repeat here: "When the issue of foreseeability is clear, the courts, as a matter of law, should decide it. In close cases, the question of foreseeability is for the jury." 582 N.W.2d at 918; *see also Bjerke*, 742 N.W.2d at 667–68 ("When it is clear whether an incident was foreseeable, the courts decide the issue as a matter of law, but in close cases, foreseeability is reserved for the jury."); *Donaldson*, 539 N.W.2d at 792 (stating that foreseeability is an element of duty, which is a question of law for the court); *Alholm*, 394 N.W.2d at 491 n. 5 ("The foreseeability issue, as a threshold issue, is more properly decided by the court prior to submitting the case to the jury."); *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985) ("Although we have stated that in close cases foreseeability may be for jury resolution, the foreseeability issue in the instant case was clear and should have been decided by the court as a matter of law." (internal citation omitted)); *Christianson v. Chi. St. Paul, Minneapolis & Omaha Ry. Co.*, 67 Minn. 94, 97, 69 N.W. 640, 641 (1896) (deciding as a matter of law that the plaintiff's injury might be anticipated from the defendant's conduct).

duty to act with reasonable care to prevent injury to others as a result of his conduct.

### D.

We next consider whether the general duty of reasonable care can include giving a warning as an exercise of reasonable care. A person acts with reasonable care when they exercise the "degree of care which a reasonably prudent person would exercise under the same or similar circumstances." *Minneapolis Emps. Ret. Fund v. Allison–Williams Co.*, 519 N.W.2d 176, 182 (Minn.1994). Therefore, the question presented in this case is whether a reasonably prudent person in a specific situation would consider the issuance of a warning to be an appropriate exercise of care.

The reasonable care standard itself does not vary based on the defendant's conduct, but the degree of care required to satisfy that standard does change based on the circumstances presented to the parties. In other words, because increased danger alters the circumstances, the care that a reasonable person would use to respond to that increased danger will also change. Consequently, a defendant owes a duty to exercise the care commensurate with all known or reasonably foreseeable dangers. *See Hanson v. Christensen*, 275 Minn. 204, 205, 145 N.W.2d 868, 870 (1966) ("The standard of care is reasonable care, but reasonable care in this connection calls for a high degree of care—a care commensurate with the risks involved."). "The greater the hazard, the greater the care, is an axiom in the law of negligence." Lee & Lindahl, *supra* § 3.24.

Drawing upon the principle that the care exercised must adequately remedy the harm foreseeable from the defendant's conduct, we have held that a defendant who owes a duty of reasonable care may satisfy that duty by warning foreseeable plaintiffs of impending danger. In *Delgado*, a case involving a hunting accident, we stated that the hunters' duty of care included "extra precautions to insure that nobody [was] injured." 289 N.W.2d at 484. We specifically held that the duty of "due care requires that each hunter be mindful of the danger created by their entry ... and that each warn his fellow hunters of third persons he knows are in the area. Failure to warn under these circumstances is negligence." *Id.* In *Ferguson v. Benson*, a case involving a car accident in road construction, we upheld an instruction that specifically told the jury to consider whether, "if due care required[, the contractor] could have posted warning signs." 309 Minn. 160, 166–67, 244 N.W.2d 116, 119–20 (1976) (holding that road construction contractors were statutorily obligated "to take adequate measures to protect the safety of the public" which included a "duty to warn the public of any hazardous condition created by [their] construction activities"). Similarly, in *Zylka*, we held that the defendant drivers' duty to exercise reasonable care required them "either to remove the hazard or give adequate warning to others." 274 Minn. at 447, 449, 144 N.W.2d at 367–68. Finally, in *Hollinbeck*, we found that a golfer on a driving range owed a duty of reasonable care to a caddy who was on the practice fairway and "in a place of danger." 261 Minn. at 485, 113 N.W.2d at 12. The golfer's duty required him to take "some precaution," and we specifically stated that the golfer "should have given [the caddy] a warning or desisted from striking the ball until [the caddy] was in a place of safety." *Id.* at 486, 113 N.W.2d at 12–13.

These cases show that a defendant can exercise reasonable care in numerous ways. Whether a defendant's cho-

sen course of action satisfies the duty of reasonable care is a question for the jury. *See Hanson,* 275 Minn. at 205, 145 N.W.2d at 870 ("Whether the precautions taken are sufficient is ordinarily a question for the jury to determine."); *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.,* 711 N.W.2d 811, 817 (Minn. 2006). In fact, the jury is specifically instructed to consider how a reasonable person would react in a similar circumstance and to find the defendant liable for negligence if the defendant failed to act as a reasonable person would. *See* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil,* CIVJIG 25.10 (5th ed.2006). A jury should be free to consider whether a reasonable person in circumstances similar to the defendant would warn others of foreseeable injury. Therefore, we hold that when a defendant owes a plaintiff a duty of reasonable care, the defendant may exercise reasonable care by warning the plaintiff of impending harm.[4]

### II.

Having established the law to be applied in this case, we next address whether the district court abused its discretion when it gave the jury the no-duty-to-warn and no-duty-to-protect instructions. The court of appeals held that the district court abused its discretion because the instructions "confused the negligence principles at is-

sue," and were prejudicial to Domagala because the instructions "seriously hampered [the] permissible argument that the exercise of reasonable care" can include giving a warning. *Domagala,* 787 N.W.2d at 673, 675. Rolland argues that the court of appeals erred in reversing the district court because (1) the no-duty-to-warn and no-duty-to-protect instructions "did not set forth an erroneous or incomplete statement of the applicable law" and (2) "[t]here is no evidence that the jury was confused." We disagree.

■ The district court has broad discretion when selecting language for jury instructions. *Peterson v. BASF Corp.,* 711 N.W.2d 470, 484 (Minn.2006). We therefore review jury instructions for an abuse of discretion. *Id.*

■ Jury instructions must "convey a clear and correct understanding of the law of the case as it relates to all the parties involved." *Peterson v. Sorlien,* 299 N.W.2d 123, 131 (Minn.1980). A jury instruction is erroneous if, when read as a whole, the instruction materially misstates the law, *George v. Estate of Baker,* 724 N.W.2d 1, 10 (Minn.2006), or "is apt to confuse and mislead" the jury, *Springfield Farmers Elevator Co. v. Hogenson Constr. Co.,* 268 N.W.2d 80, 84 (Minn.1978) (citation omitted). *See also Hilligoss v. Cargill, Inc.,* 649 N.W.2d 142, 147 (Minn.2002) (stating that jury instructions must be

---

4. Rolland argues that allowing the jury to consider whether a reasonable person would have given Domagala a warning circumvents the requirements for imposing a specific duty to warn in a negligence case—the existence of a special relationship and foreseeable harm. As applied to this case, Rolland may be correct because, on remand, Domagala may argue to the jury that Rolland breached his duty of reasonable care by failing to warn Domagala of the bucket's precarious position. But the key difference between imposing a specific duty to warn under our special relationship

jurisprudence and our holding today is evident in the element of breach. If Rolland owed a specific legal duty to warn Domagala, failure to issue a warning could constitute a breach as a matter of law. But the duty of reasonable care may be satisfied in other ways. Because we hold that a defendant may breach the general duty of reasonable care by failing to give a warning, a jury is free to find that a defendant who failed to warn of impending harm was not negligent because the defendant acted in some other manner that mitigated the risk of harm to others.

read in context as a whole); *Lieberman v. Korsh*, 264 Minn. 234, 240, 119 N.W.2d 180, 184 (1962) ("[A]n appellate court should view the instructions as far as possible from the standpoint of the total impact or impression upon the jury. The real test is 'what might the jury have understood from the language of the court?'" (citations omitted)). After examining the no-duty-to-protect and no-duty-to-warn instructions in turn, we conclude that the district court abused its discretion when it gave these special instructions.

### A.

The district court's no-duty-to-protect instruction clearly misstated the law because it omitted key language regarding the duty to protect. The jury was instructed:

> A person generally has no duty to act for the protection of another person. A legal duty to protect will be found to exist only if there is a special relationship between the parties and the risk is foreseeable. The Court has ruled, as a matter of law, that no duty to protect exists in this matter and you must not consider such a duty in your deliberation in this case.

This instruction is a misstatement of our special relationship jurisprudence. A correct statement of the law would read: "A person generally has no duty to act for the protection of another person *when the harm was created by a third party.* No duty to protect *against harms created by others* exists in this matter and you must not consider such a duty in your deliberation in this case." *See Bjerke*, 742 N.W.2d at 664. The missing language qualifies Rolland's duty to protect Domagala. Absent this limiting language, the jury could conclude that Rolland had no duty to protect Domagala from risks created by Rolland's conduct. Consequently, the instruc-

tion invited an inference that contradicts a basic tenet of negligence law: when a defendant's conduct creates a foreseeable risk of injury to another, the defendant has an affirmative duty to exercise reasonable care to avoid the injury. *See Anda*, 789 N.W.2d at 888–89; Lee & Lindahl, *supra* § 3.48. Therefore, the special no-duty-to-protect instruction materially misstated the law.

### B.

The district court also erred when it gave the jury Rolland's requested no-duty-to-warn instruction, which stated:

> A special relationship giving rise to a duty to warn is only found on the part of common carriers, innkeepers, possessors of land who hold it open to the public, and persons who have custody of another person under circumstances in which that other person is deprived of normal opportunities of self-protection. The Court has ruled, as a matter of law, that no duty to warn exists in this matter and you must not consider such a duty in your deliberation in this case.

The first sentence of this instruction does not materially misstate our law concerning the duty to warn in the context of a special relationship. But the parties in this case agreed that no special relationship existed between Domagala and Rolland. Therefore, this instruction was unnecessary. *See, e.g., Botz v. Krips*, 267 Minn. 362, 369, 126 N.W.2d 446, 451 (1964) (holding that it was error for the district court to instruct the jury on unavoidable accidents because "such an instruction merely restate[d] a phase of the law of negligence [and] serve[d] no useful purpose").

Furthermore, the second sentence of the instruction is confusing and misleading. As we stated at the outset of this opinion, the phrase "duty to warn" has more than one meaning under our law. When viewed

as a whole, the no-duty-to-warn instruction in this case is inconsistent with our holding today that a defendant who owes a duty of reasonable care may satisfy that duty by warning foreseeable plaintiffs of impending danger. The no-duty-to-warn instruction foreclosed any jury deliberations as to whether a prudent person exercising reasonable care would have warned Domagala of the bucket's precarious position. Therefore, the no-duty-to-warn instruction failed to communicate an accurate explanation of the duty of reasonable care and its breach, both of which are fundamental elements of tort law. We conclude that the no-duty-to-warn instruction was erroneous because it instructed the jury on inapplicable law, confused and misled the jury, and failed to convey a clear and correct understanding of the law in light of our holding in this case.

### C.

 When a district court gives an erroneous jury instruction, a new trial is warranted if the error destroys the substantial correctness of the charge as a whole, causes a miscarriage of justice, or results in substantial prejudice. *See Anda,* 789 N.W.2d at 891–92 (citation omitted). A jury instruction is prejudicial if a more accurate instruction would have changed the outcome of the case. *George,* 724 N.W.2d at 10 (citing *Lewis v. Equitable Life Assurance Soc'y of the U.S.,* 389 N.W.2d 876, 885 (Minn.1986)). If the effect of the erroneous instruction cannot be determined, we will give the complainant the benefit of the doubt and grant a new trial. *Id.* In *Regan v. Stromberg,* 285 N.W.2d 97, 100–01 (Minn.1979), we held that an erroneous superseding cause instruction was prejudicial because (1) "the issues of duty and cause were crucial," (2) the attorneys' attempt to correct the error in closing arguments was not curative, and (3) the jury returned an unusual verdict

that raised "serious doubt of the jury's understanding and correct application of the law."

 In this case, duty and breach of duty were crucial issues. When jury instructions "are misleading and conflicting on a material issue, a new trial should ordinarily be granted unless the error is cured." *Lindstrom v. Yellow Taxi Co. of Minneapolis,* 298 Minn. 224, 229, 214 N.W.2d 672, 676 (1974). When Domagala attempted to explain the distinction between the specific duty to warn and the "duty to act in a reasonable fashion," the district court informed the jury that "nothing the attorneys say . . . is evidence" and reread the confusing no-duty-to-warn instruction. *See George,* 724 N.W.2d at 10 (concluding that "[t]he circumstances under which the court delivered the [erroneous] curative instruction made it more memorable and important to the jury" than a later instruction that correctly stated the law). Moreover, the fact that the jury, during deliberations, asked the court about the meaning and practical effect of the no-duty-to-warn instruction is a strong indication that the jury did not understand the law in this case. *See Mjos v. Vill. of Howard Lake,* 287 Minn. 427, 436–37, 178 N.W.2d 862, 869 (1970) (stating that the fact that the jury asked for further instructions relating to an allegedly erroneous instruction was "perhaps decisive of the question" of prejudice).

Because the special instructions in this case were, at best, misleading as to the crucial elements of duty and breach of duty, we conclude that the instructions were prejudicial to Domagala. As the complaining party, Domagala receives the benefit of the doubt that the prejudicial instructions affected the outcome of the case. We therefore affirm the decision of

the court of appeals and remand this case to the district court for a new trial.

Affirmed.