*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0047**

Scott Alan Wenker
by Jeffrey Wenker, Trustee,
Appellant,

vs.

Xcel Energy, Inc., et al.,
Respondents,

City of Cottage Grove, et al.,
Defendants.

**Filed March 9, 2015
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-CV-12-15924

Kevin O'C. Green, Law Offices of Kevin O'C. Green, P.A., Mankato, Minnesota (for appellant)

Mark A. Solheim, Paula Duggan Vraa, Larson King, LLP, St. Paul, Minnesota (for respondents)

Considered and decided by Reyes, Presiding Judge; Worke, Judge; and Johnson, Judge.

UNPUBLISHED OPINION

**JOHNSON**, Judge

Scott Alan Wenker was injured at work when he was electrocuted. He sued the utility that owns and maintains the power line that was the source of the electrical current that caused his injuries. The district court granted the utility's motion for summary judgment. We conclude that the utility did not owe a duty to Wenker and, therefore, affirm.

## FACTS

The City of Cottage Grove hired Ryan Contracting Company to replace a section of an underground water pipe. On May 22, 2006, Wenker was employed by Ryan Contracting and was working on the project as a member of a five-person crew. Wenker and one other worker were in a trench, installing new pipe, while another worker operated a large excavator to dig the trench and place new pipe segments into the trench.

A Ryan Contracting supervisor was responsible for ensuring that the excavator's 40-foot boom arm stayed clear of overhead power lines. For most of the day, the power lines were not directly above the trench. In the late afternoon, the crew reached an intersection where the power lines were directly above the trench. While the crew was working at the intersection, the supervisor stepped away briefly and was distracted. The excavator's boom arm came within inches of the power line, which was close enough to allow an arc of electricity to flow from the power line to the excavator. At the time, Wenker was in the trench, sitting on an iron pipe that was electrified.

2

Northern States Power (NSP), doing business as Xcel Energy, owns and maintains the power lines in the area of Ryan Contracting's work. Earlier in the day of the accident, NSP employees were present near the worksite, but there is no evidence in the record as to the reason for their presence. One NSP employee observed that the excavator's boom arm came somewhat close to the power lines and told the Ryan Contracting supervisor to make sure that the excavator's boom arm stayed at least ten feet away from the power lines. The record does not indicate that any NSP employee was present at or near Ryan Contracting's area of work when the accident occurred. Wenker testified in his deposition that he assumed that the overhead power lines near the crew's work area had been de-energized at the request of Ryan Contracting. But NSP did not receive a request to de-energize the power lines until after the accident had occurred.

In May 2012, Wenker commenced this action against the City of Cottage Grove and NSP. He alleged that the defendants' negligence caused his injuries. In June and July 2013, the defendants separately moved for summary judgment. In November 2013, the district court granted the motions. The district court administrator entered judgment in favor of the City and NSP.

In January 2014, Wenker filed a notice of appeal from the judgment entered in favor of NSP. Wenker died while the appeal was in the briefing stage. The district court appointed one of Wenker's brothers to be the trustee of the action, and the trustee is pursuing this appeal.[1]

[1]Wenker filed his notice of appeal in January 2014. Wenker died in June 2014. This court dismissed the appeal in October 2014 with the proviso that a personal

3

# DECISION

The trustee argues that the district court erred by granting NSP's motion for summary judgment.

A district court must grant a motion for summary judgment if the evidence demonstrates "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the non-moving party. *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008). We apply a *de novo* standard of review to a grant of summary judgment, and we view the evidence in the light most favorable to the nonmoving party. *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 6 (Minn. 2012).

A plaintiff must prove four elements to establish a negligence claim: (1) the existence of a duty, (2) a breach of that duty, (3) damages, and (4) causation. *Gradjelick v. Hance*, 646 N.W.2d 225, 230 (Minn. 2002). The district court granted NSP's summary-judgment motion on the ground that Wenker could not establish the first element of his negligence claim because, as a matter of law, NSP did not owe a common-law duty of care to Wenker. The trustee argues that the district court erred by reasoning that NSP did not have a duty to protect Wenker.

---

representative or successor in interest could move to reinstate the appeal within a specified time period. Jeffrey moved to reinstate the appeal after he was appointed by the district court to be the trustee of the action. This court granted the motion and reinstated the appeal.

4

In Minnesota, "a person does not owe a duty of care to another—*e.g.*, to aid, protect, or warn that person—if the harm is caused by a third party's conduct." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177-78 (Minn. 2014). There are two exceptions to this general rule: first, if "there is a special relationship between a plaintiff and a defendant and the harm to the plaintiff is foreseeable," and, second, if "'the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff.'" *Id.* at 178 (emphasis omitted) (quoting *Domagala v. Rolland*, 805 N.W.2d 14, 23 (Minn. 2011)).

In this case, the district court concluded that NSP did not owe a duty to Wenker because both exceptions are inapplicable. The trustee does not contend that there was a special relationship between Wenker and NSP, thereby conceding that the district court's reasoning is correct with respect to the first exception. The trustee appears to contend that the second exception applies, though he does not contend that NSP failed to comply with a request to de-energize the power lines. The trustee relies primarily on evidence that NSP employees were present earlier in the day and that one NSP employee saw the Ryan Contracting crew working in close proximity to the power lines and perceived risk.

As stated above, the second exception to the general rule applies only if "the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." *Id.* In this context, the defendant's "own conduct" refers to "misfeasance, which is active misconduct working positive injury to others." *Id.* (quotation omitted). In contrast, nonfeasance is "passive inaction or a failure to take steps to protect others from harm." *Id.* (quotation omitted). The trustee does not identify any active misconduct by NSP that created a foreseeable risk of injury to Wenker. Even if NSP employees were aware that

5

the power lines presented a risk of injury, NSP had no duty to protect Wenker because NSP did not engage in any "active misconduct" that created that risk. *See id.* Granted, NSP was responsible for the existence of the power lines, but the mere presence of the power lines does not impose a duty of care on NSP to protect others from their well-known risks, so long as the power lines are properly maintained. *See Conover v. Northern States Power Co.*, 313 N.W.2d 397, 402 (Minn. 1981) (holding that NSP could be held liable for negligent maintenance of utility pole); *Zimmer v. Carlton Cnty. Co-op Power Ass'n*, 483 N.W.2d 511, 514 (Minn. App. 1992) (holding that utility did not owe duty to worker who was injured by energized power lines), *review denied* (Minn. June 10, 1992). On the day of the accident, NSP was merely passive, which is nonfeasance and does not give rise to a duty of care. *See Doe 169*, 845 N.W.2d at 178.

Thus, we conclude that the district court did not err by reasoning that NSP did not owe a duty of care to Wenker. Therefore, the district court did not err by granting NSP's motion for summary judgment.

**Affirmed.**